In re: 244.5 ACRES OF LAND

The Village, L.L.C., a Delaware limited liability company, Plaintiff Below, Appellant,

v.

Delaware Agricultural Lands Foundation, a body politic and corporate of the State of Delaware, and John F. Tarburton, in his official capacity as Secretary of the Department of Agriculture, and Farm Lands, L.P. a Delaware Limited Partnership, Defendants Below, Appellees.

No. 433,2001.

Supreme Court of Delaware.

Submitted: Aug. 6, 2002.
Decided: Oct. 18, 2002.

Constantine F. Malmberg, III, Esquire, Young & Malmberg, P.A., Dover, Delaware, for Appellant.

Thomas H. Ellis, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for Appellees Delaware Agriculture Lands Preservation Foundation and John F. Tarbuton, Former Secretary of the Department of Agriculture, sued in his official capacity only.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER, and STEELE, Justices, constituting the Court En Banc.

WALSH, Justice:

This is an appeal from a decision of the Superior Court granting summary judgment in favor of a State agency and against a property owner alleging inverse condemnation. Appellant/plaintiff below,

The Village, L.L.C. (the "Village"), is the owner of a planned residential development known as The Village at Cannon Mill in the City of Dover. The Delaware Agricultural Lands Preservation Foundation (the "Foundation"), a state agency, approved an application by the owner of an adjacent tract of land creating an agricultural preservation district pursuant to 3 *Del. C.* § 901, *et. seq.*, thereby establishing a fifty-foot setback on the Village's property. The Village filed suit against the Foundation and the Secretary of the Department of Agriculture contending that the designation of the agricultural preservation district, with its setback requirement, constituted an unconstitutional taking of its property. The Superior Court, in two opinions, granted summary judgment in favor of the State ruling, in effect, that the Village had no vested right to either compensation or a declaration that it was not subject to the fifty-foot setback requirement.

We conclude that the good faith pursuit by the Village of all steps to secure necessary permits for its development precluded, as a matter of law, it being characterized as a "new subdivision" subject to the fifty-foot setback requirement. Because it is not subject to the setback requirement, the Village suffered no "taking" subject to a claim of inverse condemnation. Accordingly, we reverse the decision of the Superior Court.

I

The following chronology of events preceding the Superior Court litigation is essentially undisputed. On May 23, 1996, the Village purchased a 65.5 acre parcel of real estate in Kent County with the intention of developing it as a multi-housing style residential neighborhood (the "Project"). In preparation for the Project, the Village hired engineers and consultants and began meeting with the planning staff of the City of Dover to agree on a plan of development. The Village received conditional approval of the Project from the City of Dover Planning Commission at its October 20, 1997 meeting. The Village also received preliminary approval of the Project from the Dover City Council on December 8, 1997. Final approval was contingent on securing the consents of other agencies such as DelDot for street access and utilities hook-up approval.

Meanwhile, Farm Lands, L.L.P., the owner of approximately 244.5 acres of land adjacent to the Project filed an application with the Foundation to create an agriculture preservation district pursuant to 3 *Del. C.* § 901, *et seq.* The establishment of an agricultural preservation district requires any adjacent "new subdivision development" to observe a fifty-foot setback requirement, thus precluding the erection of any structure within the setback. 3 *Del. C.* § 910(a). On November 26, 1997, the Foundation met to consider whether Farm Lands' property satisfied the criteria for eligibility as a preservation district, and concluded that it did. Representatives of the Village were aware of Farm Lands' application, and attended the Foundation's meeting. In accordance with the mandate of 3 *Del. C.* § 907(b), the Foundation forwarded Farm Lands' application to the Farm Land Preservation Advisory Board for Kent County ("Board") and the Kent County Regional Planning Commission ("Commission") for their independent consideration. The approval of any two of these three agencies is sufficient to create an agricultural preservation district. 3 *Del. C.* § 907(c).

Each agency then held a meeting to consider Farm Lands' application. On January 6, 1998, the Board voted to approve Farm Lands' application for a preservation district. That same day, the

Foundation published notice in the Delaware State News and the Wilmington News Journal for a January 13, 1998 meeting where final approval of the agricultural preservation district was to be considered. Farm Lands' application was then partially approved by the Commission at its business meeting of January 8, 1998, with an amendment changing the setback requirement to twenty-five feet. At the Foundation's January 13 meeting, Farm Lands' agricultural preservation district was approved and it was duly recorded on February 13, 1998 with the Kent County Recorder of Deeds.

The Village was aware of each stage of Farm Lands' application process. The Village received actual notice of each of the agency meetings, and its counsel attended all of the meetings, arguing against the preservation district's fifty-foot setback requirement because of its effect on the proposed development. Apparently, throughout this process, the Village was under the mistaken impression that the City of Dover required a twenty-five foot setback and that approval of the Farm Lands' preservation district would add an additional twenty-five feet to this requirement. In fact, the City of Dover requires a forty-foot setback, so that Farm Lands' preservation district affects only ten feet of the Village's property.

The Village claims that the additional setback requirement renders it unable to build on certain lots and significantly impairs the value of twenty-eight lots. It further claims that the total diminished value of the Project as a result of the additional setback is in excess of $400,000. The Superior Court apparently accepted this estimate for purposes of summary judgment. The Village's final plan for subdivision was approved on June 25, 1998 and recorded at the Kent County Recorder of Deeds the following day. At the time of

trial, the Village had not applied for a building permit to commence construction of its planned subdivision, nor could it do so under the applicable City ordinance. The Village maintains, however, that it expended $312,479.88 on the Project prior to the creation of Farm Lands' preservation district.

The Village initiated litigation by filing a petition for review and declaratory judgment in the Superior Court naming the Secretary of the Department of Agriculture and Farm Lands as defendants. The Village sought a declaratory judgment to the effect that the fifty-foot setback does not apply to its property or, alternatively, that it be awarded money damages for the taking and diminution of its property pursuant to 42 U.S.C. § 1983. While the litigation was pending the Village received final approval for its development plan on June 25, 1998 and recorded the final plot on June 26, 1998.

The Superior Court determined the matter through two separate opinions on cross motions for summary judgment. Initially, the Superior Court concluded that the Village did not have a vested right to a specific land use adjacent to the preservation district since it lacked building permits at the time of the creation of the preservation district. The Village project was thus deemed a "new subdivision" subject to the setback requirement. The trial court also rejected the Village's section 1983 claim of a taking on the ground that the setback requirement was a permitted interference with property expectations.

In a second decision, the Superior Court rejected the Village's due process claim based on lack of notice and fairness of the hearing process by the Foundation, concluding that the Village had made no claim of inadequate notice by the Foundation and had, in fact, appeared through counsel

at the Foundation hearing. This appeal followed.

## II

The Village asserts two claims of error in this appeal: (i) that it had a vested right to develop its land free of the fifty-foot setback requirement and (ii) that the proceedings before the Foundation were lacking in constitutionally required fair notice and fair process. In view of our determination that the Village was not a "new subdivision," and thus had acquired vested property development rights prior to the establishment of the preservation district, we find it unnecessary to address the claim of unfair process and notice. We review *de novo* the Superior Court's granting of summary judgment on the issue of the Village's claim of vested rights. *Arnold v. Society for Savings Bancorp, Inc.*, 650 A.2d 1270, 1276 (Del.1994).

█ In rejecting the Village's claim of vested rights, the Superior Court relied upon this Court's decision in *Shellburne, Inc. v. Roberts*, 224 A.2d 250 (Del.1966) which the Superior Court, and the parties here, refer to as endorsing the "permit plus" rule. In *Shellburne*, this Court ruled that "the issuance of a building permit does not, alone, confer any right against a later zoning change.... The acquisition of vested rights requires more." *Id.* at 254. The Village argues that, in light of changes in land use development and regulation over the last forty years, this Court should abandon the so-called "permit plus" rule adopted in *Shellburne* in favor of a more liberal approach that focuses on whether there has been an expenditure of funds and effort in good faith reliance on existing regulations. In this case, the Superior Court, while recognizing that the creation of an agricultural preservation district is not equivalent to the adoption of a zoning ordinance, viewed the permit plus rule as helpful in determining whether the Village had acquired vested rights sufficient to withstand other governmental regulation.

The Village's contention that the permit plus rule is outmoded given the current regulatory environment with its emphasis on a multi-stage permitting process finds scholarly support. *See, e.g.,* Overstreet & Kircheim, *The Quest for the Best Tests to Vest: Washington's Vested Rights Doctrine Beats the Rest,* 23 Seattle Univ. L.R. 1043, 1053–54 (2000). There is also decisional support for the argument that where the building application process is "validly brought and pursued in good faith" its completion should not depend on the issuance of a permit under subsequently enacted regulations. *Smith v. Winhall Planning Commission,* 140 Vt. 178, 436 A.2d 760, 762 (1981); *see also Allenbach v. City of Tukwila,* 101 Wash.2d 193, 676 P.2d 473 (Wash.1984). Moreover, the Court of Chancery, applying equitable principles, has granted relief to property owners and enforced vested rights in the face of subsequent adverse zoning regulations where a building permit has been applied for in good faith but not issued. *Wilmington Materials, Inc. v. Town of Middletown,* 1988 WL 135507, *6–9 (Del. Ch. Dec.16, 1988); *New Castle County v. Mitchell,* 1981 WL 15144 *3–7 (Del.Ch. Nov.25, 1981).

The Foundation maintains that the permit plus rule continues to be recognized in most jurisdictions and adequately protects property owners. If the rule is to be modified at all, it contends, it should be relaxed only to include those who have applied for a building permit and have substantially relied upon its likely issuance. Even under a relaxed test, the argument runs, the Village secured no vested rights because its plans had not reached the level of administrative approval sufficient to seek a building permit by the time

the agricultural district had been approved.

As this Court noted in *Shellburne*, the issuance of a building permit is not dispositive of the question of vested rights. Equally non-dispositive, in our view, is the lack of a building permit if the land owner has demonstrated reliance on the requirements currently in effect and has pursued compliance in good faith. We do not read *Shellburne* as promulgating a "permit plus" standard which controls the issue of good faith reliance in all situations, such as are present here, where the permitting process is complex and multi-leveled.

There is no dispute that the Village's efforts to develop the Cannon Mill property were well under way when the Foundation commenced proceedings to establish the preservation district. In July, 1996 the Village hired engineers and consultants to evaluate the property's suitability for development as a multi-housing style residential neighborhood development. The City of Dover Land Subdivision Regulation and Zoning Code imposes a series of approval levels involving different regulatory bodies including the City Planning Commission, the Development Advisory Committee and City Council. The Village participated in that process at all the required levels.

The record presented to the Superior Court demonstrates the efforts pursued by the developer in the following sequence: (1) In August 1996, meetings were held with the City Planning staff to discuss the design plan; (2) In December 1996, a conceptual plan was filed with the City; (3) In February 1997, a conceptual site plan was submitted to the City Planning Commission; (4) In April 1997, a conditional use application was filed with the Planning Commission; (5) In June 1997, the developer met with the Planning Commission to consider the site plan and requested waivers; (6) In October 1997, the Development Advisory Committee met to consider and comment on the project and that same month the Planning Commission held a public meeting on the project; (7) In November 1997, the Dover City Council considered the plan for the project at its regularly scheduled meeting and the following month gave its preliminary approval and granted the necessary waivers. The final approval, a required step before securing building permits, did not occur until June 1998. There is no indication, however, that the Village delayed its efforts to secure all approvals necessary to begin construction. During this almost two year process the Village expended more than $300,000, a figure the Superior Court assumed correct for summary judgment purposes.

The case illustrates the essential unfairness in a rigid application of the "permit plus" rule without taking into consideration the complexity of present day real estate development. While *Shellburne's* "permit plus" standard may continue to have viability in situations where the obtaining of a building permit is a mechanical process accomplished in a short period of time, it is not dispositive of the issue of vested rights in situations such as we confront here involving a development that could only be approved after the completion of each stage of a defined process.

■ As one court has noted "the issuance of a building permit [should not be deemed] a *sine qua non* for applicability of the substantial reliance doctrine." *Urban Farms, Inc. v. Borough of Franklin Lakes,* 179 N.J.Super. 203, 431 A.2d 163, 172 (1981). Rather the test should involve "a weighing of such factors as the nature, extent and degree of the public interest to be served by the ordinance amendment on the one hand and, on the other hand, the nature, extent and degree of the develop-

er's reliance on the state of the ordinance under which he has proceeded ...." *Id.* Here, the public interest to be served by enforcement of the preservation district setback is minimal since the setback is not intended to preclude all development and the farmland activities sought to be promoted are already in place.

In the final analysis, good faith reliance on existing standards is the test. In a given situation, the issuance, or non-issuance, of a building permit may be evidence of reliance, or lack thereof. In cases, as here, where developers expend large sums of money on the pre-permit process, it would be inequitable to leave an applicant to the vagaries of the unanticipated actions of other governmental entities during the extended process required by local authorities. Here, the Village sought to comply, and ultimately did comply, fully with all local governmental requirements of the City of Dover only to encounter restrictions by the State in a process over which it had no control.

The Village's extensive efforts to secure all necessary approval from local governmental authorities not only establishes good faith reliance but also precludes its project being classified as a new subdivision. Section 910(a) extends its setback restrictions to "any new subdivision development." We construe that language as statutory notice to potential developers that land planning should take the restrictions into account. Given the extensive efforts pursued by the Village and the substantial sum expended by it, prior to the State's proposal of the preservation district, its project can hardly be characterized as a "new subdivision." Accordingly, we hold that the Village's right to proceed with its subdivision plan became

vested by that date and is not subject to the restriction.

The judgment of the Superior Court is reversed and this matter is remanded for the entry of a judgment in favor of the appellant declaring that the preservation district setback imposed under 3 *Del. C.* § 910(a)(2) does not apply to the Project.