# STATE OF VERMONT

# ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| **In re: Gizmo Realty/VKR Associates, LLC** | } | **Docket No. 199-9-07 Vtec** |
| **(Appeal of Act 250 Permit #3R0990)** | } | |
| | } | |

## Decision on Cross-Motions for Summary Judgment

Appellant Two Rivers-Ottauquechee Regional Planning Commission appeals an August 15, 2007 decision of the District #3 Environmental Commission approving the Act 250 permit application of Gizmo Realty Holdings I, LLC ("Gizmo") and VKR Associates, LLC ("VKR") for the development of five commercial buildings on a parcel of land located in the Town of Bradford. Two Rivers-Ottauquechee Regional Planning Commission ("Two Rivers") is represented by Amanda S.E. Lafferty, Esq. Applicant Gizmo Realty Holdings I, LLC is represented by John C. Candon, Esq.

Two Rivers appealed the Commission's conclusion that the proposed development satisfies Act 250 Criterion 10. See 10 V.S.A. § 6086(a)(10) (requiring conformance with duly adopted local or regional plan). To this end, Two Rivers' Statement of Questions asks three related questions: first, whether the project under consideration will have a substantial regional impact; second, whether the regional plan should be given effect in the consideration of the project; and third, whether the project conforms to the regional plan. Both Gizmo and Two Rivers have moved for summary judgment.

## Factual Background

Unless otherwise noted, the parties have not disputed the following material facts.

1. Gizmo and VKR applied for a land use permit for a commercial project to be called the "Bradford Square Shopping Center." The project would be located on a 5.73-acre lot located in Bradford on the easterly side of U.S Route 5, which is also known in this area as Lower Plains Road.

2. The project proposes five buildings of varying sizes: 17,000 square feet, 9,100 square feet, 8,000 square feet, 7,200 square feet, and 3,500 square feet. At least one building would be used as a grocery store and another would be used as a dry goods store.

3.     The project property contains 4.5± acres of primary agricultural soils that would be impacted by the project.

4.     Gizmo applied for a municipal zoning permit to construct its shopping center with retail and commercial stores at the project site on February 23, 2007. Gizmo's Ex. 2. This zoning application was approved on May 15, 2007.[1] Id.

5.     On or about June 12, 2007, Gizmo and VKR Associates, LLC applied to the District #3 Environmental Commission ("Commission") for a commercial development. Two River's Statement of Undisputed Facts at ¶ 2; Gizmo's Reply at ¶ 2.

6.     In its August 15, 2007 decision, the Commission determined that the Municipal Plan and the Regional Plan were in conflict regarding this project. The Commission concluded that the Municipal Plan allowed intensive commercial development in the area where the project is proposed to be developed while the Regional Plan designated the same area as a "Rural Area." See District Commission Decision at 4-5 (a copy of which was submitted as Two Rivers' Exhibit F; this Decision is hereinafter referred to as the "August 15 Decision"). We have been presented with copies of the Two Rivers-Ottauquechee Regional Plan adopted on May 30, 2007 and made effective on July 4, 2007 ("2007 Regional Plan", a copy of which is contained in Two Rivers' Exhibit A) and the applicable Bradford Municipal Plan, adopted February 18, 2003 ("Municipal Plan", a copy of which is contained in Two Rivers' Exhibit D).

7.     The proposed development is adjacent to, but not part of an area designated in the 2007 Regional Plan as the "Interchange Area" which is associated with Exit 16 to Interstate 91. Under a previous regional plan, the project site is within an area designated as the "Interchange Growth Area."

8.     Because it concluded that the two plans were in conflict, the Commission analyzed the effect of the conflict by evaluating whether the proposed project would have a "substantial regional impact." August 15 Decision at 5. The Commission concluded that the project would not have a substantial regional impact.

9.     Based upon its conclusion that the project would not have a substantial regional impact, and based upon its conclusion that the proposed project did not offend the Municipal Plan, the Commission concluded that the proposed project satisfied the requirements of Act 250 Criterion

---

[1] The zoning application contains references to a "Planning Commission Decision" issued the day the application was approved, but the record before us does not contain that decision or any of the other application materials listed as attachments on the municipal application.

10 (10 V.S.A. § 6086(a)(10)). Two Rivers thereafter filed a timely appeal of the August 15 Decision with this Court.

**Discussion**

As the parties have both noted in their briefs, summary judgment is only appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." V.R.C.P. 56(c)(3). When both parties seek summary judgment, "each must be given the benefit of all reasonable doubts and inferences when the opposing party's motion is being evaluated." DeBartolo v. Underwriters at Lloyd's of London, 2007 VT 31, ¶ 8. In any de novo appeal to this Court, we are directed to apply the substantive standards that were applicable before the tribunal that rendered the decision now under appeal; these substantive standards will guide our assessment of which facts are material. 10 V.S.A. § 8504(h), V.R.E.C.P. 5(g); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will identify which facts are material").

Before an Act 250 permit is granted, an applicant must demonstrate that its project "[i]s in conformance with any duly adopted local or regional plan . . . ." 10 V.S.A. §§ 6086(a)(10), 6088(a); accord Appeal of Rivers Development, LLC, Docket Nos. 7-1-05 Vtec and 68-3-07 Vtec slip op. at 9 (Vt. Envtl. Ct. Jan. 18, 2008). In situations where both a municipal plan and a regional plan are relevant to the determination of any issue in Act 250 proceedings, we have statutory guidance to determine whether the provisions of the regional or municipal plan ought to be given effect. 24 V.S.A. § 4348(h). We are directed to give effect to the provisions of the regional plan "to the extent that they are not in conflict with the provisions of a duly adopted municipal plan." Id. § 4348(h)(1). However, when the plans do conflict, "the regional plan shall [only] be given effect if it is demonstrated that the project under consideration in the proceedings would have a substantial regional impact." Id. § 4348(h)(2); see also In re Green Peak Estates, 154 Vt. 363, 367-68 (1990) (explaining the effect of § 4348).

The first two questions in Two Rivers' Statement of Questions presuppose a conflict between the Municipal Plan and the Regional Plan. However, Gizmo suggests instead that there is no conflict between the Municipal Plan and the applicable Regional Plan. Gizmo's assertion on this point is premised upon Gizmo's belief that the Commission acted incorrectly in applying the 2007 Regional Plan to its application. Gizmo contends that the applicable regional plan is not the

2007 Regional Plan, but the regional plan that preceded it. Thus, the parties have presented us with a threshold question of which version of the Regional Plan is applicable to the pending application. See generally Gizmo's Ex. 3 (containing a portion of the Two Rivers-Ottauquechee Regional Commission Regional Plan that became effective on July 30, 2003 and thereafter was superseded by amendment that became effective on July 4, 2007. We hereinafter refer to the predecessor plan as the "2003 Regional Plan").

Two Rivers opposes consideration of this threshold question, asserting that Gizmo did not properly preserve the question of which regional plan is applicable for our consideration on appeal. "Generally, in civil [appeal] proceedings, issues not raised below are waived." State v. Decoteau, 2007 VT 94, ¶ 11. However, this is a de novo appeal. 10 V.S.A. § 8504(h), V.R.E.C.P. 5(g). In this de novo appeal, our role is to "hold a de novo hearing on those issues which have been appealed." 10 V.S.A. § 8504(h). A de novo hearing contemplates an entire trial similar to the proceedings from which the appeal arose. State v. Madison, 163 Vt. 360, 370 (1995). As we have explained, our "basic obligation" in appeals under § 8504(h) is to "apply anew the substantive legal standards" that were applicable before the tribunal appealed from, "as though no prior action had been taken [on the appealed issues]." In re: Unified Buddhist Church, Inc. Indirect Discharge Permit, Docket No. 253-10-06 Vtec slip op. at 4 (Vt. Envtl. Ct. July 31, 2007), In re: Miller Conditional Use Application, Docket No. 59-3-07 Vtec slip op. at 6 (Vt. Envtl. Ct. Nov. 5, 2007). Thus, even though it appears undisputed that Gizmo failed to raise the issue before the Commission below of which regional plan applies to its application, we have the authority, and the obligation, to determine which plan should be used in assessing whether the application now before us on appeal conforms with Act 250 Criterion 10.

In Vermont, land use rights normally vest under the version of the municipal or state land use regulations in effect at the time a proper and complete application is submitted. See Appeal of Rivers Development, LLC, Docket Nos. 7-1-05 Vtec and 68-3-07 Vtec slip op. at 6-7 (Vt. Envtl. Ct. Jan. 18, 2008) (citing Smith v. Winhall Planning Comm'n, 140 Vt. 178, 181 (1981), In re Molgano, 163 Vt. 25, 33 (1994), and Re: Burlington Broadcasters, Inc. d/b/a WIZN, et al., Docket No. 4C1004R-EB, Memorandum of Decision on Group 2 Preliminary Issues at 6–7 (Vt. Envtl. Bd. Nov. 25, 2003) ("Burlington Broadcasters"). However, the issue presented here, whether an earlier or later version of a regional plan applies, has not been directly addressed by this Court or our Supreme Court. This issue was, however, addressed by the former Environmental Board in

Burlington Broadcasters. Burlington Broadcasters at 6-9. Having reviewed that decision, we find the Board's reasoning persuasive and will therefore give the Board's decision in Burlington Broadcasters the same weight as a well-reasoned and persuasive decision from this Court. 10 V.S.A. § 8504(m).

The Burlington Broadcasters Board, finding the Molgano Court's reasoning instructive, specifically concluded that if an applicant diligently pursues a local zoning permit before applying for a companion Act 250 permit for their proposed development, then the regional plan that should apply to their Act 250 application is the plan in effect when the municipal zoning application was submitted. See Burlington Broadcasters at 8, 11 (citing Molgano, 163 Vt. at 32-33). The Burlington Broadcasters Board based its conclusion upon the Molgano Court's conclusion that where "a developer diligently pursues a proposal through the local and state permitting processes before seeking an Act 250 permit, conformance under [Criterion 10] is to be measured with regard to zoning laws in effect at the time of a proper zoning permit application." Molgano, 163 Vt. at 33.

In reaching its holding, the Court relied upon In re Preseault, which held that the intervening adoption of a municipal plan would be "ineffective to derail proceedings validly brought and pursued in good faith to implement rights available under previous law." See Molgano, 163 Vt. at 32 (quoting In re Presault, 132 Vt. 471, 474 (1974)) (internal quotations omitted). The Molgano Court also emphasized that the vesting rule is intended to give applicants a measure of stability and certainty when applying for land use permits, and avoids giving local planning bodies the authority to apply land development laws and policies retroactively. Id. at 31-33.

The Burlington Broadcasters Board found the analysis in Molgano, with its emphasis on consistency with the local development process, certainty for applicants, and the requirement of diligent pursuit of local permits by applicants, to apply "with equal force" to the question of which regional plan ought to apply in Act 250 proceedings. Burlington Broadcasters at 8. We agree with the Board's analysis. In doing so, we conclude that the pending Act 250 application should be reviewed for conformance with the 2003 Regional Plan, as that was the Plan in effect at the time Applicants submitted their complete zoning application to the Town.

We recognize that our conclusion here may seem disjointed, as we are recognizing a vesting of rights that occurs before an Act 250 application is submitted. We note that a regional

plan does not necessarily stand in the same hierarchical relation to a municipal plan as a municipal plan stands in relation to zoning or subdivision bylaws, nor is it necessarily considered during the local permitting process. Under the Vermont Planning and Development Act, 24 V.S.A. ch. 117, a regional plan stands in an advisory relationship with a municipal plan. See 24 V.S.A. §§ 4349(a) ("If a regional planning commission prepares and adopts a regional plan, the regional plan or a portion thereof <u>may</u> then be adopted by the legislative body of any member municipality as its plan . . . .") (emphasis added); § 4382(a)(8) ("A plan for a municipality <u>may</u> be . . . compatible with . . . the regional plan and shall include…[a] statement indicating how the plan relates to . . . plans for adjacent municipalities, areas and the region developed under this title") (emphasis added); and § 4384(e)(2) (requiring a municipality to submit its proposed plan to and solicit comments from the executive director of the regional planning commission). By contrast, since zoning bylaws are adopted as regulatory tools used to implement municipal plans, they are supposed to "be in conformance with the plan[,]" and must be in accord with the municipal plan policies. 24 V.S.A. §§ 4401, 4410.

Because a regional plan does not necessarily receive any consideration in the local permitting process, a rigid view of these proceedings would suggest that the municipal proceedings should not trigger a vesting of rights under a then-existing regional plan. Under such logic, applicants generally would have no rights vest under a regional plan during the local permitting process. Therefore, several of the policy considerations in favor of vesting would not apply or at least would not apply until a complete Act 250 application was accepted. However, our vested rights jurisprudence suggests we should not take such rigid approach to the vesting of rights under regulations in effect at the time of an applicant's first land use application.

We are counseled not to take a rigid view of the land development process. Vermont's vested rights jurisprudence suggests that we ought to view the development application process—which can require several stages of local and state government permitting, conducted over many months—as a combined process for the purpose of adjudicating the vesting of a developers' rights. Such a view is supported by commentators and case law precedent. "[Modern land development has become] an intensely regulated process requiring compliance with a host of complex land use regulations and the issuance of multiple governmental approvals prior to ground-breaking." Grayson P. Hanes & J. Randall Minchew, <u>On Vested Rights to Land Use and Development</u>, 46 Wash. & Lee L. Rev. 373, 389 (1989).

In response to regulatory conditions that are often volatile, courts have tried to delineate the times when applicants' reliance upon existing regulations and the right to have an application considered under those regulations. Id. at 375-77. As discussed, Vermont generally follows the minority vesting rule, which vests rights at the time of a proper and complete application. In re Handy, 171 Vt. 336, 350 (2000); accord Weyerhauser v. Pierce County, 976 P.2d 1279, 1283 (Wash. Ct. App. 1999) (explaining the minority rule generally).[2] Vermont's vesting rule also requires the "good faith" pursuit of permits, and the requirement aims to prevent would-be developers from submitting incomplete applications in an attempt to secure rights under existing regulations and avoid forthcoming, more stringent regulatory amendments. In re Ross, 151 Vt. 54, 57 (1989); see also In re Presault, 132 Vt. at 474 ("the intervening adoption of a master plan is, by itself, ineffective to derail proceedings validly brought and pursued in good faith to implement rights available under previous law.") and In re Handy, 171 Vt. at 350 (noting the good faith requirement for vested rights analysis in both zoning and Act 250 cases).

Because of the multi-stage nature of Vermont land use regulatory approval, a more proper first approach to the vesting analysis may not be to look only at the commencement of the local application process, as was the approach in Burlington Broadcasters, but first to see if the developer's good faith and diligence carried over to its pursuit of an Act 250 permit. There is decisional support for this holistic view of the modern development process. Rejecting the "essential unfairness in a rigid application" of the more stringent "permit-plus" vesting test, a test that does not take into consideration the complex nature of today's land use regulation, the Delaware Supreme Court endorsed a test that looked for good faith reliance on existing standards. In re 244.5 Acres of Land, 808 A.2d 753, 757-58 (Del. 2002).

In that case, a developer pursued the local permitting process, but during the local process, an adjoining landowner applied to a state agency to create an agricultural preservation district on its lands. Id. at 754. "[N]ew subdivision development" adjacent to such a district would be subject to setback requirements greater than those imposed by the local regulations; the developer argued that its pursuit of the local permits vested rights in the local regulations. Id. at 754. The

---

[2] Some commentators believe that the state of vested rights law is clearly delineated, while others consider the law to be in constant flux. Compare Gregory Overstreet & Diana M. Kirchheim, The Quest for the Best Test to Vest: Washington's Vested Rights Doctrine Beats the Rest, 23 Seattle U. L. Rev. 1043 (2000) (explaining that vested rights tests may be broken into three types: majority, minority, and Washington) with David S. Warner and Emily R. Schey, Recent Developments in Vested Rights: Maintaining the Status Quo, 39 Urb. Law. 695 (2007) (noting several subtleties between "minority" or "complete application test" states like Vermont and North Carolina and "majority" states).

244.5 Acres Court found that it would be inequitable "to leave an applicant to the vagaries of the unanticipated actions of other governmental entities during the extended process required by local authorities," and held that the developer's rights to the lesser setback requirements had vested. Id. at 758. Similarly, where a developer has diligently pursued local permits in good faith, and then has diligently pursued the applicable state land use permit, it would be unfair to subject that developer to "the vagaries of the unanticipated actions" of other government bodies during the local permit process. In doing so, we defer to the individual rights of developers, as well as their desire for certainty and predictability, and against a rigidly technical view of the land use permitting processes.

Here, Gizmo, as a co-Applicant, bears the burden of demonstrating that it pursued the local and Act 250 permitting processes diligently. 10 V.S.A. § 6088(a); V.R.C.P. 56(c)(3). In addition, since we are considering Gizmo's motion for summary judgment, we will give Two Rivers the benefit of all reasonable doubts and inferences. Kremer v. Lawyers Title Ins. Corp., 177 Vt. 553, 554, 2004 VT 91, ¶ 7. Two Rivers may not rest on bare allegations alone to meet its burden of demonstrating a disputed material fact. Webb v. Leclair, 2007 VT 65, ¶ 14.

Gizmo applied for local permits on February 27, 2007, and it received approval for its shopping center plans on May 15, 2007. Gizmo's Ex. 2. Two Rivers has contested whether Gizmo diligently sought local permits and whether its rights vested under the 2003 Regional Plan, but has confined its argument to contending that the issue of which Regional Plan applies was not properly preserved below for our review on appeal, a contention we have rejected. See supra, page 4. Therefore, we are left with Gizmo's undisputed assertion that it diligently pursued the local permitting process, which it has supported with the approved permit application, and the parties' agreement that Gizmo sought an Act 250 permit on or about June 12, 2007, just one month after it secured local permit approval. Gizmo completed the local permitting process and then applied for an Act 250 permit. This is not a situation where the applicant hastily submitted an application in an attempt to secure rights under a more lenient standard. See In re Ross, 151 Vt. 54, 58-59 (1989) (holding an incomplete application cannot vest rights). Nor does the record demonstrate any dilatory action or inaction on Gizmo's part. Therefore, we conclude that Gizmo acted in good faith and diligently pursued its land use approvals and is thus entitled to review of its pending Act 250 application under the 2003 Regional Plan.

We must next determine whether the 2003 Regional Plan and the Municipal Plan are both relevant to the same issues under Criterion 10, and if so, determine whether there is any conflict between the two. 24 V.S.A. § 4348(h), Green Peak Estates, 154 Vt. at 367-68. "Provisions of a regional plan, like zoning ordinances, should be construed according to the ordinary rules of statutory construction." In re MBL Assocs., 166 Vt. 606, 607 (1997). If the language is clear, we will follow its express terms and inquire no further. Id. However, we are directed to not give effect to abstract statements of policy that give no specific standards for implementation or that are, at best, ambiguous. See In re Times & Seasons, LLC, 2008 VT 7, ¶¶ 22-23 (holding that ambiguous terms such as "where feasible" in a town plan were too abstract to enforce).

With regard to this project, and in particular this project's proposed location, both the 2003 Regional Plan and the Municipal Plan seek to encourage commercial development in this area. Regarding the Municipal Plan, the proposed project is location is within the "Lower Plain Commercial" area. Gizmo's Ex. 2. The Municipal Plan explains that "[d]evelopment in this area should be concentrated commercial development that does not unnecessarily consume land." Municipal Plan at 37. The Plan encourages "[p]lanned commercial subdivisions and developments utilizing common access roads" and "cluster site planning principles." Id. at 38.

Regarding the 2003 Regional Plan, the Plan begins by announcing planning and development goals, issues, and concerns for "Interchange Areas" generally, and then discusses specific concerns for the "Bradford Interchange," meaning the area near the I-91 interchange at Exit 16 in Bradford. 2003 Regional Plan at 39. Generally speaking, the 2003 Regional Plan considers interchange areas "prime areas for development due principally to their relative ease of public access and favorable site conditions." Id. at 36. The area in which the Gizmo project site is located is identified in the 2003 Regional Plan as an "Interchange Growth Area". Id.

Appropriate land uses in interchange areas may include "highway oriented lodging and service facilities, trucking terminals, research establishments, office or business parks, and light manufacturing facilities or similar type uses." Id. at 38. When addressing the Bradford Interchange, the 2003 Regional Plan contains a narrative of the existing conditions around the interchange as well as some of the history of the area's development, but it contains no specific development provisions. Id. at 39-40. We conclude that the Municipal Plan and the 2003 Regional Plan do not conflict regarding the proper uses for this area. Both plans seek commercial development in the Bradford Interchange or Lower Plains Commercial area.

We discern no conflict between the two plans regarding what types of development are appropriate for the area that would include the proposed project. To this extent, the 2003 Regional Plan must be given an effect equal to that given the Municipal Plan when considering whether this project conforms with Criterion 10. 24 V.S.A. § 4348(h)(1). For this reason, because we hold that there is no conflict between the Municipal Plan and the applicable Regional Plan, we **DISMISS** Two Rivers' Question 1 because it presupposes a conflict between the two Plans. In addition, Gizmo's Motion for Summary Judgment is **GRANTED** as to Appellant's Question 2, since the Question solely asks which version of the regional plan is applicable to this application.

Two Rivers' Question 3 asks whether "the project under consideration [is] in conformance with the [regional plan]." The record before us thus far lacks important information, such as a complete version of the 2003 Regional Plan, Gizmo's land use application, and other information that would allow us to compare Gizmo's proposed project with the 2003 Regional Plan in order to determine whether the proposed project conforms to the Plan. While we conclude as a matter of law that the 2003 Regional Plan and the Municipal Plan agree that this type of project is appropriate for this area, we have yet to be presented with sufficient material facts to determine if this particular project conforms to all of the other applicable provisions of the 2003 Regional Plan. Without a complete version of the 2003 Regional Plan, we are unable to determine which facts might be material to resolving Question 3. Therefore, because material facts are in dispute, or at least have yet to be presented to the Court, both parties' motions for summary judgment are **DENIED** as to Question 3. See In re: Higgins-Jockey Lane Subdivision Final Plat, Docket No. 200-8-06 Vtec slip op. at 11 (Vt. Envtl. Ct. Sept. 28, 2007) (denying summary judgment where a town plan, implicated by subdivision bylaws, had not be provided).

For the forgoing reasons, Appellant Two Rivers-Ottauquechee Regional Planning Commission's Question 1 is hereby **DISMISSED**. Appellee-Applicant Gizmo Realty Holdings I, LLC's Motion for Summary Judgment on Question 2 is **GRANTED** to the extent that Question 2 asks which version of the regional plan is applicable to this land use application. Lastly, both parties' Motions for Summary Judgment are **DENIED** as to Question 3, as material facts are either in dispute or have not yet been provided to the Court.

Done at Newfane, Vermont this 30th day of April, 2008.

_____
Thomas S. Durkin, Environmental Judge

- 10 -