**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

CRODA, INC., )
)
Plaintiff, )
)
v. ) C.A. No. 2020-0677-MTZ
)
NEW CASTLE COUNTY, )
)
Defendant. )

**ORDER ADDRESSING CROSS-MOTIONS
FOR SUMMARY JUDGMENT ON COUNTS III AND IV**

WHEREAS, on review of Plaintiff's motion for summary judgment (the "Motion") and Defendant's cross-motion for summary judgment (the "Cross-Motion," and together, the "Motions"), as briefed and taken under advisement on September 3, 2021, it appears:[1]

---

[1] For the purposes of the pending Motions, I draw the relevant facts from the Verified Complaint, Docket Item ("D.I.") 1 [hereinafter "Compl."], as well as the admissions on file, together with any affidavits. *See* Ct. Ch. R. 56(c). Citations in the form of "Croda OB" refer to Plaintiff's Opening Brief in Support of Its Motion for Summary Judgment, available at D.I. 11. Citations in the form of "Croda RB" refer to Plaintiff's Reply Brief in Support of Its Motion for Summary Judgment and Answering Brief in Opposition to New Castle County's Motion for Summary Judgment, available at D.I. 17. Citations in the form of "NCC OB" refer to Defendant New Castle County's Opening and Answering Brief in Support of Its Cross-Motion for Summary Judgment, and citations in the form of "NCC OB Ex. —" refer to the exhibits attached to the Transmittal Affidavit of Max B. Walton in support of Defendant's Cross-Motion and in opposition to Plaintiff's Motion, available at D.I. 14. Citations in the form of "NCC RB" refer to Defendant New Castle County's Reply Brief in Support of Its Cross-Motion for Summary Judgment, available at D.I. 18.

A.    Plaintiff Croda, Inc. is a Delaware corporation with its principal place of business in Edison, New Jersey.[2]  Since 2006, Croda has been the sole owner and operator of a chemical manufacturing facility known as Atlas Point, which is located at 315 Cherry Lane, New Castle, Delaware, 19720.[3]  The Atlas Point facility is located on land in New Castle County that has been zoned Heavy Industrial ("HI") throughout the time Croda has owned and operated the facility.[4]

B.    Defendant New Castle County (the "County") is a political subdivision of the State of Delaware.[5]  On April 30, 2019, the County Council introduced proposed Ordinance No. 19-046, "To Amend New Castle County Code Chapter 40 ('Unified Development Code'), Article 3 ('Use Regulations') And Article 33 ('Definitions') Regarding Landfills" ("Ordinance 19-046").[6]

C.    Ordinance 19-046 contains four sections.[7]  Section 1 amends Section 40.03.323 of the Unified Development Code ("UDC") to add a 140-foot height limitation to solid waste landfills.[8]  Section 2 amends the general use table in UDC

---

[2] Compl. ¶ 3.

[3] *Id.* ¶¶ 3, 6.

[4] *Id.* ¶ 6.

[5] *Id.* ¶ 4.

[6] *Id.* ¶ 8.

[7] *Id.* Ex. A.

[8] *Id.*; Compl. ¶ 10.

Section 40.03.110 (the "General Use Table").[9]  Specifically, Section 2 amends Table 40.03.110B, a sub-table of the General Use Table, by adjusting the permissibility of "Heavy Industry" land use in HI zoning districts from "permitted," indicated by the letter "Y," to "special use review," indicated by the letter "S."[10]  In other words, the amendment requires special use review for future industrial uses in HI zoning districts.[11]  Ordinance 19-046 does not prohibit industrial uses or affect existing industrial uses in HI zoning districts.[12]  Section 3 adds "Solid Waste Landfills" to the definition of "Industrial [U]ses" considered "Heavy [I]ndustry" in UDC Section 40.33.270.[13]  Section 4 states, "This Ordinance shall become effective immediately upon its adoption by New Castle County Council and approval of the County Executive, or as otherwise provided in 9 *Del. C.* Section 1156."[14]

D.  On July 27, 2019, the County published notice of Ordinance 19-046 in *The News Journal*, a general circulation newspaper in the County, along with

---

[9] Compl. Ex. A; Compl. ¶ 12.  The General Use Table displays zoning districts as columns and type of land use as rows.  *See* New Castle Cty. C. § 40.03.110.  The land uses are grouped by category, for example, Industrial Uses, and then by type, for example, Heavy Industry.  *Id.*  The UDC defines land uses that fall under Heavy Industry in Section 40.33.270(C), for example, chemical manufacturing or solid waste landfills.  *Id.* at § 40.33.270(C).

[10] Compl. Ex. A; Compl. ¶ 12.

[11] Compl. Ex. A; Compl. ¶ 12.

[12] *Id.* Ex. A.  The General Use Table indicates, "Y=permitted, N=prohibited, L=limited review, S=special use review, A=accessory."  *Id.*; *see also* New Castle Cty. C. § 40.03.110.

[13] Compl. Ex. A; Compl. ¶ 10.

[14] *Id.* Ex. A.

3

information regarding the various public hearings on Ordinance 19-046, including the agenda for its August 27 meeting.[15] It did so by listing the title of the Ordinance.

E.    On August 7, the County's Department of Land Use held a public hearing at which the County Planning Board recommended in favor of Ordinance 19-046.[16] On August 27, the County Council held a public hearing on the ordinances published in July, including Ordinance 19-046.[17] The County Council Land Use Committee and members of the public discussed Ordinance 19-046.[18] On August 31, the County published notice in *The News Journal* that the County Council had adopted Ordinance 19-046.[19]

F.    On January 18, 2020, the County published notice in *The News Journal* of another ordinance, Ordinance 20-008, titled, "To Amend New Castle County Code Chapter 40 ('Unified Development Code'), Article 3 ('Use Regulations') And Article 33 ('Definitions') Regarding Industrial Uses" ("Ordinance 20-008").[20] Ordinance 20-008 would have retracted Section 2 of Ordinance 19-046 as applied to

---

[15] Compl. ¶ 18; NCC OB Ex. A.

[16] Compl. ¶¶ 19, 22; *see also* Croda OB Ex. B.  The parties did not submit the full transcript of the August 7, 2019 public hearing.

[17] Compl. ¶ 23; NCC OB Ex. A.

[18] *See* Croda OB Ex. C; NCC OB Ex. D.  The parties did not submit the full transcript of the August 27, 2019 public hearing.

[19] NCC OB Ex. B.

[20] NCC OB Ex. C.

industrial uses other than landfills. On May 5, the County Planning Board held a public hearing addressing Ordinance 20-008.[21] To date, neither the County Planning Board nor the Department of Land Use have issued a recommendation on Ordinance 20-008.[22] Therefore, Section 2 of Ordinance 19-046 stands as to all industrial uses.

G.     On June 17, a private attorney emailed Croda's Senior Corporate Counsel about Ordinances 19-046 and 20-008: "Ordinance 20-008 was intended to fix an error in a 2019 ordinance that could impact CRODA in regard to any future expansions."[23] According to Croda, without Ordinance 20-008's "fix," Atlas Point's planned future uses are subject to special use permit requirements, instead of permitted "by right."[24]

H.     Croda filed its complaint in this action on August 17 (the "Complaint").[25] The Complaint asserts four counts. Count I seeks injunctive relief barring adoption and enforcement of Section 2 of Ordinance 19-046.[26] Count II seeks a declaratory judgment that the "County's approval of [Ordinance 19-046] was

---

[21] Croda RB at 7.

[22] *Id.*

[23] Croda OB Ex. E, Affidavit of Shawn P. Tucker, Esquire ¶¶ 2, 7; *id.* at Ex. 1; Compl. ¶ 33.

[24] Compl. ¶ 7.

[25] *See generally* Compl.

[26] *Id.* ¶¶ 37–45.

arbitrary, capricious and illegal" and is void without legal force or effect.[27] Count III alleges the County violated Croda's procedural due process and, as a result, is liable to Croda under 42 U.S.C. § 1983.[28] Count IV alleges the County violated Croda's substantive due process and, as a result, is liable to Croda under 42 U.S.C. § 1983.[29]

I. Croda moved for summary judgment on Counts I, II, and III on November 20.[30] On December 23, the County filed its answering brief and opening brief in support of its Cross-Motion arguing that summary judgment should be granted on Counts I, II, III, and IV.[31] The parties fully briefed the Motions and the Court heard oral argument on September 3, 2021.[32] By separate order dated today, the County's Cross-Motion was granted as to Counts I and II. This order denies Croda's Motion and grants the County's Cross-Motion as to Counts III and IV.

J. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[33] On a motion for summary judgment, "[t]he moving party bears the burden

---

[27] *Id.* ¶¶ 46–49.

[28] *Id.* ¶¶ 50–57.

[29] *Id.* ¶¶ 58–62.

[30] D.I. 11.

[31] D.I. 14; D.I. 15.

[32] D.I. 17; D.I. 18; D.I. 25; D.I. 32 [hereinafter "Tr."].

[33] Ct. Ch. R. 56(c).

of establishing that there are no issues of material fact, and the court must review all evidence in the light most favorable to the non-moving party."[34]

> Where the parties have filed cross motions for summary judgment and have not presented argument to the Court that there is an issue of fact material to the disposition of either motion, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions.[35]

K.     Croda moved for summary judgment on Count III, asserting that because Ordinance 19-406's title did not reveal Section 2 would apply to all HI, not just landfills, the County failed to afford HI property owners like Croda adequate notice and an opportunity to be heard, and so violated Croda's procedural due process rights.[36]

L.     The County moved for summary judgment on Counts III and IV on the grounds that Croda does not have a constitutionally protected property interest in its property's zoning classification.

M.     The threshold question for both procedural and substantive due process analyses is whether the plaintiff has a protected property interest.[37]  Where a plaintiff

---

[34] *Weil v. VEREIT Operating P'ship, L.P.*, 2018 WL 834428, at *3 (Del. Ch. Feb. 13, 2018) (internal quotation marks omitted) (quoting *Gary v. Beazer Homes USA, Inc.*, 2008 WL 2510635, at *3 (Del. Ch. June 11, 2008)).

[35] Ct. Ch. R. 56(h).

[36] Croda OB 25–30; Croda RB 27.

[37] *In re New Maurice J. Moyer Acad., Inc.*, 108 A.3d 294, 317–18 (Del. Ch. 2015) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)); *id.* at 322 (declining to analyze

7

does not clear this hurdle, its due process claims fail as a matter of law.[38] "A procedural due process claim requires proof that there was some protected property interest and that deprivation of that protected interest occurred without notice and opportunity to be heard meaningfully."[39] "[T]he protections of substantive due process attach only where a plaintiff has demonstrated deprivation of an interest that is considered a 'fundamental' right under the United States Constitution."[40] "Only after finding the deprivation of a protected interest does the Court look to see if the State's procedures comport with due process."[41] "State law defines property interests for purposes of procedural due process claims."[42]

---

plaintiffs' substantive due process claim where the plaintiffs failed to establish a protected property interest).

[38] *Id.* at 317–18, 322.

[39] *Salem Church (Del.) Assocs. v. New Castle Cty.*, 2006 WL 2873745, at *14 (Del. Ch. Oct. 6, 2006).

[40] *New Maurice J. Moyer Acad.*, 108 A.3d at 321 (citing, *inter alia*, *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000)).

[41] *Id.* at 317–18 (alterations omitted) (quoting *Sullivan*, 526 U.S. at 59); *accord id.* at 321; *Kern Co. v. Town of Dewey Beach*, 1994 WL 89333, at *10 (Del. Super. Feb. 18, 1994) (finding "[b]ecause this property right was vested, plaintiff had a constitutionally protected property interest" and therefore, plaintiff was entitled to due process).

[42] *Ruiz v. New Garden Twp.*, 376 F.3d 203, 206 (3d Cir. 2004) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)); *Kern*, 1994 WL 89333, at *9 ("Property interests do not evolve from the Constitution; instead, they stem from sources such as state laws or ordinances. In order 'to create a protected property interest, the statute [and/or ordinance] must give a person a legitimate claim of entitlement to a benefit, rather than a mere expectation of receiving it.'" (citations omitted) (quoting *MacNamara v. Cty. Council of Sussex Cty.*, 738 F. Supp 134, 141 (D. Del. 1990)), *aff'd* 922 F.2d 832 (3d Cir. 1990))).

N.    "Although land ownership might initially appear to present a straightforward example of a protected property interest, it is far from clear that every impact on landownership caused by zoning regulations creates a right to process."[43]  Under Delaware law, zoning may support a protected property interest if the property owner holds a "vested right" as defined by common law.[44]  "The underlying basis for the vested rights doctrine is a recognition that the imposition by the government of regulation or an intended use of a person's land once he has

---

[43] *MacNamara*, 738 F. Supp. at 141.

[44] *Kern*, 1994 WL 89333, at *10 (finding "[b]ecause this property right was vested, plaintiff had a constitutionally protected property interest"); *Salem Church*, 2006 WL 2873745, at *14 (considering allegations of a vested right to have pled a protectable property interest); *Town of Cheswold v. Cent. Del. Bus. Park* (*Cheswold I*), 163 A.3d 710, 728 (Del. Super. 2017) ("Once a party obtains such a [vested] right, the doctrine of vested rights protects it against legislative interference." (collecting authorities)), *rev'd on other grounds*, *Town of Cheswold v. Cent. Del. Bus. Park* (*Cheswold II*), 188 A.3d 810 (Del. 2018).

After being pressed at argument about the effect of Delaware's vested rights doctrine on Croda's claims, Croda submitted supplemental briefing contending it is not actually bringing a vested rights claim.  D.I. 28 at 2, 6.  Croda's Complaint belies that assertion. *See* Compl. ¶ 53 ("Croda has a vested property right in the use and enjoyment of its Atlas Point facility, including the ability to conduct heavy industrial uses on the land zoned as 'Heavy Industry.'  Croda's property rights have been vested at least since it purchased the Atlas Point facility in 2006, when it relied in good faith on the New Castle County Council's designation of the site as a 'heavy industry' zone.  Croda relied on Defendant's classification of the site as 'Heavy Industry' and expected that it would be able to use the property for industrial purposes without the need for additional zoning approvals."); *Id.* ¶ 54 ("Because Croda's property right has vested, Croda has a constitutionally protected property interest in the continued use and enjoyment of its property for Heavy Industry uses."); *Id.* ¶ 61 ("Croda has a vested property right in the use and enjoyment of its Atlas Point facility, including the ability to conduct heavy industry uses on the land zoned as 'Heavy Industry.'").

reached a certain point in achieving his goal, by incurring substantial expenditures or obligations, constitutes a due process violation."[45]

O.      Standing alone, the fact that property is subject to a zoning classification "does not create a vested right in a particularly zoning classification" or "confer any right against a later zoning change."[46]  Delaware courts have long held that property owners do not have a vested right to property "zoned perpetually in a fixed manner"[47]  because zoning legislation should be "progressive, not static" and "sufficiently flexible to adjust to changed conditions in the interest of the public welfare."[48]  Even where a property owner applies for and receives a permit, the property owner does not have a per se right against a later zoning change.[49]

---

[45] *State v. Raley*, 1991 WL 18114, at *3 (Del. Super. Feb. 8, 1991), *aff'd*, 604 A.2d 418 (Del. 1991).

[46] *Shellburne, Inc. v. Roberts*, 224 A.2d 250, 254 (Del. 1966); 83 Am. Jur. 2d Zoning and Planning § 508 (2d ed. 2021) ("[G]enerally a property owner has no vested right to have an existing zoning classification or an existing zoning ordinance continue unchanged if the municipality rationally exercises its police power and determines that a change in zoning is required for the well-being of the community." (citations omitted)).

[47] *See, e.g.*, *Reinbacher v. Conly*, 141 A.2d 453, 457 (Del. Ch. 1958) ("[P]roperty owners, such as plaintiffs, who have purchased land subsequent to the effective date of a general zoning plan have no vested right to have the neighborhood in which they own property zoned perpetually in a fixed manner.").

[48] *Shellburne*, 224 A.2d at 253.

[49] *In re 244.5 Acres of Land*, 808 A.2d 753, 757 (Del. 2002) ("As this Court noted in *Shellburne*, the issuance of a building permit is not dispositive of the question of vested rights.  Equally non-dispositive, in our view, is the lack of a building permit if the land owner has demonstrated reliance on the requirements currently in effect and has pursued compliance in good faith."); *Mayor & Council of New Castle v. Rollins Outdoor Advert., Inc.*, 475 A.2d 355, 360 (Del. 1984) ("[In *Shellburne*,] we held that a property owner has

P.	A landowner seeking to demonstrate vested rights in the zoning of her property must prevail in the equitable balancing as originally set forth in *In re 244.5 Acres of Land*.[50]	"The court should consider, among other factors it sees as important, the nature, extent and degree of the public interest to be served by the ordinance amendment, the nature, extent and degree of the developer's reliance on the state of the ordinance under which he has proceeded—i.e., the developer's good faith reliance on existing standards,—and the effect of the pace of the development effort because delay may defeat a vested rights claim."[51]

> Other factors a court may consider include: the ordinance's effects on public health and welfare—including safety, education, transportation, medical services, utilities, and environmental concerns; whether the developer incurred major expense or made material progress toward obtaining approval before the ordinance's enactment; any actions or statements made by municipality officials that the developer reasonably and substantially relied on; and whether the developer was on notice or had reason to anticipate the ordinance's enactment prior to incurring expenses on the project.[52]

---

no vested right in a zoning classification, and that a building permit does not, per se, confer any right against a later zoning change. But we ruled that under certain circumstances, such as where an owner had made a substantial change of position or a substantial expenditure, a vested right arises from good faith reliance upon a building permit.").

[50] 808 A.2d at 753; *see Cheswold II*, 188 A.3d at 821 ("If the Town adopts an ordinance affecting the Business Park property, and the Business Park asserts a vested rights claim in response, the Business Park's claim should be decided by applying the balancing test in *In re 244.5 Acres of Land*." ). Vice Chancellor Glasscock recently provided a scholarly review of the evolution of the vested rights equitable balancing factors in *Ocean Bay Mart, Inc. v. The City of Rehoboth Beach*, 2021 WL 4771246 (Del. Ch. Oct. 13, 2021).

[51] *Cheswold II*, 188 A.3d at 821–22 (internal quotation marks and footnotes omitted).

[52] *Id.* at 822 n.62.

**IT IS ORDERED**, this 28th day of October, 2021, that:

1.      Croda has not established that it holds a constitutionally protected property interest that was violated by Ordinance 19-046.  Croda argues broadly that it has a protected "right to use its property" that entitles Croda to notice of any change to their property rights.[53]  Croda argues "it is axiomatic that property owners have a property interest in the use and enjoyment of their property."[54]  These broad assertions do not establish a vested constitutionally protected property interest. Delaware law is clear that mere property ownership does not create a vested right in zoning classification that can anchor a due process challenge.[55]

2.      And Croda has not attempted to satisfy the *In re 244.5 Acres of Land* factors.  It has not pled reliance on a pending permit to expand or modernize Atlas Point, let alone reliance on an already-granted permit.  Because Croda has not even

---

[53] Croda RB 35–36; D.I. 28 at 4–5; Tr. 7–8.

[54] Croda RB 34.

[55] *See Rollins Outdoor Advert.*, 475 A.2d at 360 (finding while "the use and enjoyment of private property cannot be subjected to arbitrary and unreasonable restrictions which are clearly not essential to the public good or general welfare of the community, . . . .[w]e find that the implication arising from this language is that if an ordinance reasonably restricts or limits a specific use of property and the ordinance is reasonably related to the general welfare of the community, it would not be susceptible to constitutional challenge.") (emphasis, citations, and internal quotation marks omitted); *see also Pike Creek Recreational Servs., LLC v. New Castle Cty.*, 238 A.3d 208, 211–12 (Del. Super. 2020), *aff'd*, 2021 WL 3437984 (Del. Aug. 5, 2021) ("As the Court explained, a developer who takes actions reliant on then-existing zoning rules to advance a particular development can, if the circumstances warrant under a balancing test, accrue a vested right to have the development evaluated under those rules notwithstanding an intervening change in law." (citing *Cheswold II*, 188 A.3d at 821–22)).

tried to satisfy Delaware's state law requirements to establish a protectable property interest, Croda's due process claim must fail.

3.     Croda relies on *Bohemia Mill Pond v. New Castle County Planning Board*[56] to claim its due process rights were violated because it "never received notice of the change to County law," even in the absence of an established protectable property interest.[57]  In *Bohemia*, the appellee conceded that the appellant had a protected property interest, so the Superior Court only examined notice and opportunity to be heard.[58]  In light of that concession, *Bohemia* does not stand for the proposition that a zoning notice deficiency is always a due process violation, nor that zoning is a protectable property interest.

4.     Croda does not have a vested right in a perpetual zoning classification. The County did not strip Croda's land of its HI status.[59]  It merely added a permitting procedure for expansion applicable to other similarly-zoned uses.[60]  Indeed, under Ordinance 19-046, Croda still can apply for any special use permits necessary to

---

[56] 2001 WL 1221685 (Del. Super. Oct. 1, 2001).

[57] Croda OB 29; Croda RB 27–36.

[58] *Bohemia*, 2001 WL 1221685, at *2 ("Here, the Appellee concedes that the Appellant has a protected property interest, thus this Court only needs to examine whether adequate notice and an opportunity to be heard was afforded to Appellant.").

[59] Compl. Ex. A.; New Castle Cty. C. § 40.03.110.

[60] *See* New Castle Cty. C. § 40.03.110 (requiring special use permits in HI districts for the following uses:  Institutional (protective care); Commercial (heavy retail and service); Other (exterior lighting for outdoor recreational uses); Other (parking structures)); Tr. 37.

13

achieve its proposed facility expansions. Croda does not need to apply for a variance. The absence of a protected property interest precludes relief on Croda's procedural and substantive due process claims.[61]

5. The County's Cross-Motion for Summary Judgment is **GRANTED** as to Counts III and IV. Accordingly, and for the same reasons, Croda's Motion is **DENIED** as to Count III.

*/s/ Morgan T. Zurn*
Vice Chancellor Morgan T. Zurn

---

[61] *Willdel Realty, Inc. v. New Castle Cty.*, 270 A.2d 174, 178 (Del. Ch. 1970) ("And so here. The County government initiated the [zoning] change without request, ownership had not changed, and . . . the owners did [n]ot have a permit at the time of rezoning. And plaintiffs have not shown any of the kinds of matters which create vested rights as outlined in the Supreme Court's opinion in [*Shellburne, Inc. v.*] *Roberts*."), *aff'd*, 281 A.2d 612 (Del. 1971); *see also Ruiz*, 376 F.3d at 215 (Rosenn, J., concurring) ("Mindful of the Supreme Court's instruction that traditionally the courts should refuse to 'decide constitutional questions when the record discloses other grounds of decision, whether or not they have been properly raised . . . by the parties,' *Neese* [*v. S. Ry. Co.*, 350 U.S. 77, 78 (1955)], we should not engage in a constitutional due process analysis when the record discloses beyond dispute another ground for disposal of the plaintiffs' claim. That ground is that the tenants have no vested property interest under state law.").