J. Warren HILDRETH, Jr., Judith Louise Hildreth, Robert Warren Hildreth, and Mary Martha Hildreth, Petitioners Below, Appellants,

v.

CASTLE DENTAL CENTERS, INC., Respondent Below, Appellee.

No. 195, 2007.

Supreme Court of Delaware.

Submitted: Sept. 19, 2007.

Decided: Nov. 15, 2007.

---

Kevin A. Guerke, Seitz, Van Ogtrop & Green P.A., Wilmington, Delaware, for Appellants.

John D. Hendershot, Richards, Layton & Finger, P.A., Wilmington, Delaware, for Appellee.

Before BERGER, JACOBS and RIDGELY, Justices.

BERGER, Justice.

In this appeal from an appraisal proceeding, we consider whether the Court of Chancery correctly allocated the corporation's fair value between the preferred and common stockholders. Appellants, common stockholders, contend that the preferred stock was void and that the trial court erred in valuing the preferred stock on an as-if-converted basis because there were insufficient authorized shares of common stock to permit the conversion. We hold that the preferred stock was validly issued and that the trial court acted within its discretion in its valuation of the two classes of stock. Accordingly, we affirm.

### Factual and Procedural Background

Castle Dental Centers, Inc., formed in 1981, operated an integrated dental network in four states. For several years before the June 2004 merger, Castle had been financially troubled. In 2002, Castle was in default to its senior secured lenders. In July 2002, the company issued preferred stock in exchange for $21.7 million in debt. Nonetheless, at year end, Castle had a negative book value of $21.9 million and total debt of $49.5 million. In a second recapitalization in May 2003, Castle issued another series of preferred stock in exchange for $13 million. In addition, Castle repurchased its senior bank debt at a 57% discount from face value.

The preferred stock was convertible into common stock and had voting rights on an as-if-converted basis. The preferred stock certificates of designation required Castle to maintain sufficient authorized and unissued shares of common stock to enable full conversion. In the event of an authorized share failure, the certificates required Castle to hold a stockholders' meeting and increase the number of authorized shares.

When Castle issued the preferred stock, the company had approximately 8 million shares of common stock outstanding, and a total of 18 million authorized shares. Because the preferred stock was convertible into more than 200 million shares of common stock, Castle twice attempted to amend its charter to increase the number of authorized shares of common stock. Both amendments were ineffective, however, because Castle did not seek the approval of the common stockholders, voting as a separate class, as required by 8 *Del. C.* § 242(b)(2).

In June 2004, Castle merged with a wholly-owned subsidiary of Bright Now! Dental, Inc. for a net price of $34.3 million. Under the merger agreement, each share of common stock was entitled to receive $0.1572 per share. The preferred stock, as well as certain options and warrants, was entitled to receive the same price per share on an as-if-converted basis. As a result, the net merger consideration ($34.3 million) was divided by approximately 219 million (the hypothetical number of fully diluted shares of common stock) to determine the price that each share would be entitled to receive in the merger.

J. Warren Hildreth, and other family members, sought appraisal as to 265,000 shares of common stock. The Hildreths do not contend that the merger price was unfair or that Castle or its directors breached any duties owed to Castle stockholders. Indeed, the Hildreths agree that the fair value of Castle's equity as of the merger date was the net merger price of $34.3 million. They sought appraisal because they claim that because of the failure to authorize sufficient shares of common stock, (i) the preferred stock should be declared void, and (ii) the net merger consideration should be allocated solely on the basis of the 18 million shares of common stock authorized by Castle's charter. The trial court rejected their claim and this appeal followed.

## Discussion

■ The Hildreths rely on *STAAR Surgical Company v. Waggoner*[1] and *Triplex Shoe Co. v. Rice & Hutchins, Inc.*[2] in arguing that the authorized stock failure rendered the preferred stock void. Those cases are inapposite, in that they hold that stock issued without satisfying the requirements of 8 *Del. C.* § 151 is void. In *STAAR*, for example, a class of preferred stock was held void because the board failed to adopt both a resolution authorizing the issuance of the stock and a certificate of designation for the stock. Here, by contrast, the Castle board properly adopted resolutions authorizing the issuance of the preferred stock and filed certificates of designation with the Secretary of State.

■ The only infirmity in Castle's preferred stock was that its conversion rights were not fully enforceable because of the authorized share failure. The Hildreths suggest that this limitation on the preferred stockholders' rights and preferences somehow nullified the original issuance of preferred stock. Their theory is incorrect as a matter of law. An invalid term of an

1.   588 A.2d 1130 (Del.1991).

2.   17 Del.Ch. 356, 152 A. 342 (1930).

otherwise valid contract, if severable, will not defeat the contract.[3]

 The Hildreths' alternative argument addresses the same issue from a slightly different perspective. The argument is that even if the preferred stock was validly issued, the Hildreths' proportionate share of Castle's fair value must be calculated based on the actual number of authorized shares (18 million) instead of the hypothetical number of common shares that would be outstanding if the preferred stock were fully converted (219 million). This argument fails because it assumes (without any factual or legal underpinning) that the only permissible way to value the preferred stock is based on its convertibility into common stock. It is true that in this case the merger agreement used the preferred stock's conversion feature to calculate the proportion of the total equity that would be paid to the preferred stockholders. But the parties to the agreement also could have used other metrics instead. For example, they could have "done the math" and assigned a dollar value to each share of preferred stock (approximately $115) and achieved the same result, irrespective of the applicable conversion formula.

The issue in this appraisal is not what mechanism the parties to the merger agreement chose to allocate a price per share, but what proportion of the total equity, in fairness, should have been allocated to the common stock in this appraisal proceeding. The Hildreths failed to present any evidence to the Court of Chancery concerning the proper allocation of value as between the preferred and common stock, separate and apart from the allocation method set forth in the merger agreement. In the absence of any such evidence, the Court of Chancery had the discretion to base its decision on the allocation agreed to in the merger agreement,[4] and we find no abuse of that discretion.

## Conclusion

Based on the foregoing, the judgment of the Court of Chancery is affirmed.

---

3. *See: Tracey v. Franklin,* 67 A.2d 56, 61 (Del.1949)(Court noted that an illegal provision in a voting trust does not automatically render the entire agreement invalid.); *Abercrombie v. Davies,* 123 A.2d 893, 903 (Del.Ch. 1956) (After invalidating a portion of a voting agreement, the court held that the stockhold-

er provisions were severable and enforceable.); *Weed v. Lyons Petroleum Co.,* 294 F. 725, 731 (D.Del.1923).

4. *M.P.M Enterprises, Inc. v. Gilbert,* 731 A.2d 790, 797 (Del.1999).