# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TOWN OF CHESWOLD, | : | |
| | : | C.A. NO.  K13M-08-016 JJC |
| Petitioner | : | Consolidated Court of Chancery |
| | : | C.A. No. 1574-JJC |
| | : | In and For Kent County |
| v. | : | |
| | : | |
| CENTRAL DELAWARE BUSINESS | : | |
| PARK, a Delaware general partnership, | : | |
| | : | |
| Respondent. | : | |

## **OPINION**

Submitted: March 10, 2017
Decided: June 6, 2017

Max B. Walton, Esquire, CONNOLLY GALLAGHER, LLP, Newark, Delaware, *Attorney for the Petitioner.*

Mark F. Dunkle, Esquire, PARKOWSKI, GUERKE & SWAYZE, P.A., Dover, Delaware, *Attorney for Defendant.*

Clark, J.[1]

---

[1] Sitting simultaneously as a Vice Chancellor by designation under Del. Const. art. IV, § 13(2) for purposes of hearing this consolidated matter.

## I. Introduction

These cross motions for summary judgment are before the Court because the Town of Cheswold (hereinafter "Town") seeks clarification of, or in the alternative relief from, prior identical Stipulated Orders (hereinafter "Stipulated Orders") of the Superior Court and the Court of Chancery. In 2005, the Town and Central Delaware Business Park (hereinafter "CDBP") entered into a settlement agreement approved by both the Superior Court and the Court of Chancery in Stipulated Orders to resolve litigation over the Town's Comprehensive Land Use Ordinance (hereinafter "2005 Ordinance"). Pursuant to these stipulations, CDBP agreed to drop its claims against the Town, and in exchange, the Town published certain amendments to the 2005 Ordinance that preserved the M-1 zoning designation for certain parcels of property located in the Central Delaware Business Park (hereinafter "Business Park"). Furthermore, the Town agreed to process five pending site plans and building permit applications and to approve four of those five. The Town now seeks clarification regarding whether it is entitled, under these Stipulated Orders, to change its zoning ordinance with regard to the Business Park. In the alternative, it seeks relief from the Stipulated Orders to permit it to make such amendments.

This matter involved two parallel suits in 2005, resolved by two parallel orders. Accordingly, when the instant dispute arose, two parallel actions were again filed in the Court of Chancery and Superior Court. The Court of Chancery matter was consolidated into the Superior Court action after the presiding judicial officer was designated by the Chief Justice pursuant to Delaware Constitution Article IV, section 13(2) to serve as both Judge and as Vice Chancellor to resolve the matter. For the reasons set forth herein, the Court finds that pursuant to the Stipulated Orders of both courts, the claim recognizing CDBP's vested rights in the

2

Business Park was finally resolved in 2005. Accordingly, the doctrine of *res judicata* controls, and absent relief from those judgments, the Town is now barred from relitigating the claim. Furthermore, the Town, on the present record, has not met its burden to justify relief. As a consequence, CDBP's rights vested in 2005 and remain so to present.

## II. Background and Arguments of the Parties

In 1977, the Town adopted a zoning ordinance (hereinafter "1977 Ordinance") establishing zoning districts within the Town including the M-1 Industrial District. The 1977 Ordinance set forth a rudimentary enumeration of zoning districts with permitted and proscribed uses. Under this ordinance, the Business Park was zoned as part of the M-1 Industrial District.

This ordinance governed land use in the Town until the Town adopted the 2005 Ordinance in an effort to modernize its zoning provisions. The 2005 Ordinance set forth a comprehensive framework for land use in the Town including changes to zoning classifications as well as the permitted and proscribed uses within the new zoning districts. Pursuant to the 2005 Ordinance, the previously designated M-1 Industrial District was broken into two new zoning districts designated as the I-1 Light Industrial and the I-2 Heavy Industrial zones.

Prior to the enactment of the 2005 Ordinance, the Town held a public hearing. During that hearing, CDBP objected to the changes affecting the M-1 Industrial District, since it would affect its Business Park. CDBP proposed an amendment, Article 5A, under which the Business Park would: (1) retain the M-1 zoning classification, and (2) continue to be governed by the 1977 Ordinance. At the conclusion of the hearing, the Town Council allegedly adopted Article 5A, meaning that the Business Park would remain zoned as M-1 Industrial. At that

3

point, CDBP understood that Article 5A would be incorporated into the 2005 Ordinance.

However, after the public hearing, the Town published the 2005 Ordinance without the Article 5A amendment. Following the publication of the 2005 Ordinance without this provision, a dispute arose between the Town and CDBP leading to CDBP filing a Superior Court action in 2005 seeking a writ of mandamus. CDBP asked the court to compel the Town to publish and apply Article 5A, as adopted. CDBP also simultaneously filed a parallel action in the Court of Chancery seeking, *inter alia,* a declaration that CDBP's rights in the Business Park were vested prior to the adoption of the revised zoning ordinances.

Before either court rendered a decision, the parties submitted the Stipulated Orders in an effort to resolve both actions. Pursuant to the settlement agreement incorporated into these orders, the Town acknowledged that it had in fact unanimously passed Article 5A on April 4, 2005. The Town confirmed that the "entire [Business Park] property shall continue with M-1 Zoning and site plan/building permit procedures under the 1977 Zoning Code."[2] Furthermore, the Town agreed to amend and republish the 2005 Ordinance reflecting the Business Park's designation as M-1 and subject to the plan and building permit procedures under the 1977 Ordinance.[3] The Town also agreed to process all of the pending site plans and building permits under the 1977 Ordinance and issue approvals of four of those five within 10 days of execution of the stipulations.[4]

In compliance with the Stipulated Orders, the Town codified Article 5A in the current Town Code. The net effect of the Stipulated Orders was the

---

[2] Stipulated Orders.

[3] *Id.*

[4] *Id.*

recognition of CDBP's vested rights in the Business Park. In exchange for the Town recognizing CDBP's vested rights and adopting Article 5A, CDBP dismissed all claims against the Town.

The amendment the Town adopted pursuant to the consent decrees, which is the focus of the instant dispute, is found in Article 5A of its current zoning ordinances. It provides that

> [i]t is necessary and desirable; as a matter of public policy, to recognize vested property development rights in order to ensure reasonable certainty, stability, and fairness in the land use planning process and in order to stimulate economic growth . . . . The following development plans satisfy the provisions of this Article 5A as vested development plans: Record Plan of Central Delaware Business Park . . . . *A vested property right shall be deemed established with respect to any lots, parcels or tract of land [subject to this zoning ordinance].* A vested property development right, once established as provided in this Article 5A, precludes any zoning or land use action by the Town of Cheswold which would alter, impair, prevent, diminish, impose a moratorium on development, or otherwise delay the development or use of the property subject to this Article 5A, except with the written consent of the owner of such land.[5]

There is no question that this ordinance and its recognition of the "vested property right" applied solely to CDBP.

However, in 2013, the Town began considering enacting a new zoning ordinance that would affect CDBP's rights under the Stipulated Orders. Namely, the Town began considering downzoning the vacant, unsold lots within the Business Park. Accordingly, it seeks clarification as to what the Stipulated Orders require regarding legislative changes for land use and building construction matters in the M-1 district. After the Town filed its action, both parties agreed to

---

[5] CDBP Opening Brief Ex. 3 (Article 5A Amendment) (emphasis added).

simultaneously brief the issues and requested that the Court decide the matter pursuant to cross-motions for summary judgment.

During the course of the briefing, the Town argued that the Stipulated Orders did not preclude future Town councils from enacting zoning ordinance which would affect the Business Park. Instead, the Town argued that the purpose of the Stipulated Orders was to codify the changes to the 2005 Ordinance that the Town Council adopted but never published. Further, the Town maintains that the intent of the Stipulated Orders was to: (1) require the Town to publish Article 5A which CDBP lobbied for and the Town Council passed; (2) make clear that *pending* applications would be processed under the procedures applicable to the 1977 Ordinance; and (3) dismiss the pending actions in the Superior Court and in the Court of Chancery. Therefore, the Town argues that CDBP had not acquired perpetual vested rights in the 1977 Ordinance. The Town further argues that the Town Council was not able to legally enter into a contract regarding its zoning powers. The Town contends that an interpretation of the Stipulated Orders which would prohibit future Town councils from enacting zoning legislation would amount to illegal contract zoning and would impermissibly bind future councils.

The Town seeks a declaratory judgment stating that the 2005 Stipulated Orders do not preclude it from considering and enacting legislative changes for land use and building construction matters in the Business Park. In the alternative, the Town seeks relief from the Stipulated Orders pursuant to Superior Court Civil Rule 60 and the parallel Court of Chancery Rule 60 (hereinafter collectively "Rule 60").

In contrast, CDBP views the Stipulated Orders and the enactment of Article 5A as recognizing CDBP's vested rights. It argues that if the Town were to enact new zoning legislation that interfered with CDBP's ability to continue developing

the Business Park under the 1977 Ordinance, the Town would impair these vested rights. It also opposes the Town's contention that the 2005 agreement constituted contract zoning and argues that the Town is not entitled to equitable relief.

The Court held oral argument on November 18, 2016 to consider these issues. After oral argument, the Court identified an area of law that required additional briefing. Namely, the Court requested supplemental briefing regarding the potential applicability of *res judicata* and collateral estoppel since the resolution in 2005 included stipulated parallel orders in the Court of Chancery and the Superior Court.[6] In CDBP's supplemental brief, it raised two additional issues, the doctrines of Repose and Laches. Thereafter, the Court permitted the Town to respond to those two additional arguments. The following sets forth this Court's opinion regarding the parties' rights and obligations under the 2005 Stipulated Orders.

### III.  Legal Standards

Before the Court are cross-motions for summary judgment. In reviewing a motion for summary judgment, "viewing the facts in the light most favorable to the nonmoving party," the moving party must demonstrate "that there are no material issues of fact still in dispute and that the moving party is entitled to judgment as a matter of law."[7] The mere fact that both parties filed motions for summary judgment "does not act *per se* as a concession that there is an absence of factual

---

[6] *Res judicata* is also referred to as claim preclusion and collateral estoppel is referred to as issue preclusion. Throughout the remainder of this opinion, the Court will reference these doctrines as *res judicata* and collateral estoppel.

[7] *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991).

issues."[8]  However, "where the parties have not presented argument to the court that there is an issue of material fact, the court shall deem the motion to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motion."[9]

The Town seeks a declaratory judgment in this matter declaring its rights in light of the Stipulated Orders.  Both courts have the jurisdiction to "declare rights, status, and other legal relations whether or not further relief is or could be claimed."[10]  However, to entertain a declaratory judgment suit, there must be an actual controversy.[11]  Therefore, this legislation enables courts to hear "declaratory judgment actions where the alleged facts are such that a true dispute exists and eventual litigation appears to be unavoidable."[12]  Here, neither party disputes that an actual controversy exists.

In the alternative to seeking a declaratory judgment that Article 5A is unenforceable or that the Stipulated Orders do not prohibit amending the zoning requirements applicable to the Business Park, the Town seeks relief from the two Stipulated Orders pursuant to Rule 60(b).  The language found in Rule 60(b) is identical in both the Court of Chancery and the Superior Court Civil Rules and allow relief for

> (1) [m]istake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an

---

[8] *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997).

[9] Super. Ct. R. 56(h); Ct. Ch. R. 56(h).

[10] 10 *Del. C.* § 6501.

[11] *XI Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1216–17 (Del. 2014).

[12] *Rollins Int'l Inc. v. Int'l Hydronics Corp.*, 303 A.2d 660, 662 (Del. 1973).

adverse party; (4) the judgment is void; (5) it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.[13]

## IV.  Discussion

For the following reasons, the Court finds that CDBP acquired vested rights pursuant to the settlement agreement entered as stipulated judgments in 2005. Therefore, the doctrine of *res judicata* governs this decision.  Since CDBP was the beneficiary of court orders in 2005 finding that its rights were vested, under the vested rights doctrine, the Town cannot enact new legislation that will interfere with CDBP's vested rights in the Business Park.[14]  Despite the 2005 judgments, the Town raised several arguments regarding why either the 2005 Ordinance was *ultra vires* or in the alternative why it should not be applied prospectively.  The Court finds that these arguments are both (1) dispensed with by *res judicata* and (2) independently are without merit.  Therefore, the Stipulated Orders, as final judgments, only permit the Town to validly request relief pursuant to Rule 60(b).  Based on the record before the Court, the Town is not entitled to such relief.

---

[13] Ct. Ch. R. 60(b)(2); Super. Ct. R. 60(b)(2).

[14] CDBP raised several additional arguments including, equitable estoppel, a Contracts Clause violation, the doctrine of Laches, and the Statute of Repose, in an attempt to prevent the Town from challenging the 2005 Stipulated Orders.  Since the Court holds that the Stipulated Orders fixed CDBP's rights as vested in 2005 and those orders are entitled to the effect of *res judicata*, the Court will not address CDBP's additional arguments.

**A. The Stipulated Orders recognized that CDBP acquired vested rights and the doctrine of *res judicata* provides final resolution of that matter.**

CDBP argues that it has perpetual vested rights in the Business Park, and therefore, any changes in the Town's zoning provision cannot affect its rights. It maintains that the two parties entered the settlement agreement acknowledging CDBP's vested rights, and in return, it agreed to dismiss its suits against the Town. CDBP argues that the settlement agreement's primary purpose was to recognize its vested rights.

In response, the Town argues that the 2005 Ordinance and the Stipulated Orders did not create perpetual vested rights. Instead, according to the Town, the plain language of the Stipulated Orders merely states that the 1977 Ordinance will continue to apply to the Business Park. Additionally, the Town maintains that the intent of the parties was not to create vested rights. Instead, the Town argues that the intent of the parties was to require the Town to publish Article 5A, to process pending site applications, and to dismiss the pending litigation. Therefore, the Town argues that if the parties had intended these orders to create perpetual vested rights, either or both orders would have expressly included such language. The Town argues that the parties' failure to include such language precludes this Court from now finding perpetual vested rights. Moreover, the Town believes that it is impossible to acquire perpetual vested rights pursuant to a zoning ordinance.

The Court recognizes the tension between the doctrine of vested rights and a municipality's need to enact zoning ordinances to benefit the public welfare. While the Town asks this Court to find that CDBP does not have vested rights, the Court declines to do so because the parties settled the vested rights issue in 2005. In 2005, the parties decided to forego litigation and instead entered into a settlement agreement. Both courts then approved the settlement in the form of

10

consent orders. Despite the Town's argument to the contrary, these consent orders acknowledged that CDBP acquired vested rights. Accordingly, the claim regarding CDBP's vested rights was determined in 2005.

Since the courts decided this issue in 2005, the Court must determine whether either the doctrine of *res judicata* or collateral estoppel require this Court to acknowledge CDBP's vested rights. At the outset, the Court notes that the doctrine of collateral estoppel is not applicable in the case at hand. It independently does not bar the Town from rearguing the issue of vested rights.[15] The United States Supreme Court, however, has recognized the distinction between applying *res judicata* and collateral estoppel to consent agreements.[16] Based on the separate focus of these two doctrines, the Court noted that "consent agreements ordinarily are intended to preclude any further litigation on the *claim* presented but are not intended to preclude further litigation on any of the *issues* presented."[17] This is because one of the elements of collateral estoppel requires a court to first reach the merits regarding an issue to be actually decided and essential to the decision.[18] In other words, the doctrine of collateral estoppel does not apply to consent agreements because a consent judgment does not reach the

---

[15] *See Arizona v. California*, 530 U.S. 392, 414 (2000) (citing 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4443 (2d ed. 1981) (stating that consent orders do not ordinarily support the application of collateral estoppel)).

[16] *Id.*

[17] *Id.* (emphasis added).

[18] *United States v. Int'l Building Co.*, 345 U.S. 502, 506 (1953); *Arizona*, 530 U.S. at 414 (stating that a consent judgment is not an actual adjudication and therefore the elements of collateral estoppel are not met).

merits of factual sub-issues, and therefore, sub-issues are not actually litigated and essential to the determination.[19]

The elements of *res judicata*, however, do not require the court to reach the merits of a case.[20] Therefore, *res judicata* may separately bar the Town's argument if its elements are satisfied.[21] Here, CDBP's original claims sought two principal remedies involving two claims. In the Court of Chancery, it sought a declaration that its rights in the Business Park were vested. In the Superior Court, it sought a writ of mandamus requiring the Town to publish and apply an ordinance that it had enacted.

The purpose of the *res judicata* doctrine is to "provide a definite end to litigation, prevent vexatious litigation, and promote judicial economy."[22] In order to accomplish this purpose, Delaware has adopted a five part test to determine whether *res judicata* will bar a subsequent claim.[23] *Res judicata* will bar a claim where:

> (1) the original court had jurisdiction over the subject matter and the parties; (2) the parties to the original action were the same as those parties, or in privity, in the case at bar; (3) the original cause of action or the issues decided was the same as the case at bar; (4) the issues in the prior action must have been decided adversely to the appellants in the case at bar; and (5) the decree in the prior action was a final decree.[24]

---

[19] *Int'l Building Co.*, 345 U.S. at 506.

[20] *Id.*

[21] *Id.*

[22] *La Point v. AmerisourceBergen Corp.*, 970 A.2d 185, 191 (Del. 2009).

[23] *Dover Historical Soc'y, Inc. v. City of Dover Planning Comm'n*, 902 A.2d 1084, 1092 (Del. 2006).

[24] *Id.*

Here, the Town does not question whether the Superior Court and the Court of Chancery in 2005 had jurisdiction to enter these Stipulated Orders. Additionally, it is uncontested that the parties are the same in the present litigation as they were in 2005. The Town and CDBP were the only two parties involved in the 2005 litigation and are the only parties involved in this dispute.

However, the parties disagree on whether the remaining elements of *res judicata* are met. The Town argues that the courts in 2005 never decided that CDBP obtained a vested property right and that the courts merely declared that development of the Business Park would continue under the 1977 Ordinance. In this regard, the Town argues that the courts did not consider the issue of vested rights in 2005.

While the Stipulated Orders, themselves, do not specifically state that CDBP acquired vested rights, they require the Town to "amend and republish the New Zoning Code to include Article 5A as unanimously passed on April 4, 2005."[25] Accordingly, both the Superior Court and Court of Chancery orders incorporated by reference the provisions in Article 5A recognizing vested rights.[26] The Stipulated Orders clearly identify by reference Article 5A,[27] and it is clear that the

---

[25] CDBP's Opening Brief Ex. 2 and Ex. 4.

[26] The Delaware Supreme Court has recognized that a court order can incorporate by reference other documents. *See Harvey & Harvey, Inc. v. Knotts, Inc.*, 620 A.2d 857, 1993 WL 22032, at *1 (Del. Jan. 26, 1993) (Table) (holding that the court order under review failed to incorporate by reference a transcript); *see also State v. Felton*, 2016 WL 3568523, at *10 (Del. Super. Ct. June 22, 2016) (finding that a judicial decision regarding probable cause can incorporate by reference prior judicial decisions in terms of probable cause for a warrant). Therefore, Article 5A can be incorporated by reference into the 2005 court orders if the procedure for incorporation is met. In deciding whether the Stipulated Orders incorporated Article 5A by reference, the Court will construe it essentially as it would a contract. *Samost v. Samost*, 641 Fed.Appx. 123, 125 (3d Cir. 2016) (citing *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236–37 (1975)).

[27] *Star States Dev. Co. v. CLK, Inc.*, 1994 WL 233954, at *4 (Del. Super. Ct. May 10, 1994).

13

parties intended this provision to be incorporated by reference.[28]  Therefore, Article 5A is treated as if it were contained within the four-corners of the Stipulated Orders.[29]

Furthermore, when interpreting consent orders, rules of contract interpretation apply.[30]  Accordingly, in terms of stipulated judgments and consent orders, courts look to extrinsic evidence for interpretation only when ambiguity exists.[31]  However, "frequently the circumstances surrounding [the consent decree's] formation will be relevant to its meaning."[32]  Here, the circumstances surrounding the formation of the consent decrees confirms that the parties, and thereby the courts, intended to resolve the claims by recognizing CDBP's vested rights in the Business Park.

The ordinance adopted by the Town that authorized the settlement is a compelling piece of evidence relevant to the intent of the parties.  Namely, it provided that the "Town's position is basically in agreement with vested rights" and then continues by exempting only issues that are not relevant to the case at

---

[28] *Id.* (analyzing *Realty Growth Inv'rs v. Council of Unit Owners*, 453 A.2d 450, 454 (Del. 1982)).

[29] *See Incorporation by Reference*, Black's Law Dictionary (10th ed. 2014) ("[a] method of making a secondary document part of a primary document by including in the primary document a statement that the secondary document should be treated as if it were contained within the primary one").

[30] *E.g., ITT Cont'l Baking Co.*, 420 U.S. at 238; *Harris v. City of Phila.*, 47 F.3d 1333, 1337 (3d Cir. 1995).

[31] *E.g., United States v. State of New Jersey*, 194 F.3d 426, 430 (3d Cir. 1999); *Fox v. U.S. Dep't of Hous. and Urban Dev.*, 680 F.2d 315, 319 (3d Cir. 1982).

[32] *Fox*, 680 F.2d at 319; *see also ITT Cont'l Baking Co.*, 420 U.S. at 238 (stating that when enforcing a consent decree, a court can rely on certain aids of construction including "the circumstances surrounding the formation of a consent order").

14

hand.[33] Although this Court finds that Article 5A was incorporated into the Stipulated Orders, if it was not incorporated, the Court would look to it as evidence of the circumstances surrounding the formation of the consent decrees. It expressly provided that "[a] vested property right shall be deemed established with respect to any lot, parcel or tract of land [of the Business Park]."[34] Article 5A also included language that specifically acknowledges vested rights for "parcels or tracts of land created by development plans previously approved by the Town . . . under the Zoning Ordinance in effect prior to the adoption of this Ordinance and where such development plans were recorded in the land records of Kent County prior to the adoption of this Ordinance."[35] Article 5A also specifically acknowledges that CDBP satisfies this provision and recognizes CDBP's vested rights.[36] Finally, in reviewing the circumstances surrounding the consent decrees, the settlement related correspondence between the two parties' attorneys leaves no other reasonable conclusion than that the agreement intended to recognize CDBP's vested rights.[37]

Since both the Superior Court and the Court of Chancery issued Stipulated Orders acknowledging CDBP's vested rights, it follows that the courts decided the issue of vested rights adversely to the Town. Additionally, the original courts had jurisdiction over the matter, the parties are the same, and the original cause of action is the same. The final element of *res judicata* requires a final court order, which is present here in the form of the Stipulated Orders. The Stipulated Orders,

---

[33] CDBP's Opening Brief Ex. 3. (Resolution of Sept. 19, 2015)

[34] *Id.*

[35] CDBP's Opening Brief Ex. 3 (Article 5A Amendment).

[36] *Id.*

[37] CDBP's Opening Brief Ex. 3 (parties' correspondence).

15

even though entered as consent decrees, are entitled to *res judicata* and accordingly bar subsequent suits based upon the same claim.[38]

The Town seeks to avoid application of *res judicata* by arguing that these are not the same claims because the relief sought in 2005 involved a declaratory judgment claim and a writ of mandamus action that directly addressed the nature of CDBP's rights. The Town argues that those suits are different from the current dispute because the Town currently seeks clarification of the orders or alternatively relief from judgment. The Town, however, brought this suit seeking to avoid continued recognition of CDBP's vested rights. CDBP, in the Court of Chancery suit in 2005, sought and obtained a stipulated order declaring that CDBP did in fact have such rights. The type of relief sought in 2005 by CDBP and the type of relief sought now by the Town seeking a declaration that the prior orders are illegal or unenforceable does not represent a change in the underlying claim.

In another attempt to avoid the doctrine of *res judicata*, the Town argues that the Stipulated Orders were not a final resolution of the case because those orders did not state that the suits were dismissed with prejudice. Since the courts did not specify that the suits were dismissed with prejudice, under parallel Court Rules 41,[39] the Town argues that the Stipulated Orders were not final decrees thus making *res judicata* inapplicable. However, it is well recognized that when the parties to a suit consent to dismissal and the court approves that dismissal, the

---

[38] *See Ezzes v. Ackerman*, 234 A.2d 444, 445 (Del. 1967) (stating that both a judgment after trial on the merits or after a court approved settlement agreement are entitled to have the binding effect of *res judicata* and bar subsequent suits); *NTC Grp., Inc. v. West Point-Pepperell, Inc.*, 1990 WL 143842, at *3 (Del. Ch. Oct. 17, 1990) (stating that "consent decrees are given the same effect as a final judgment after full litigation on the merits, and therefore *res judicata* has been applied to them").

[39] Ct. Ch. R. 41(a)(1)(ii); Super. Ct. Civ. R. 41(a)(1)(II) ("[u]nless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice").

resulting consent decree constitutes a final judgment by the court.[40] Therefore, the fact that the Stipulated Orders did not state that the courts were dismissing the referenced litigation with prejudice does not change the fact that these were final decrees entitled to *res judicata*.

Finally, the Town seeks to avoid the effects of *res judicata* by arguing that a court cannot enforce an illegality, and Article 5A amounts to an illegality. The Town argues (1) that the courts, it, and CDBP illegally settled the 2005 claims because the Stipulated Orders bound future councils, and (2) that the agreement separately amounted to illegal contract zoning. These means to avoid the continued application of the Stipulated Orders are also precluded by the doctrine of *res judicata*.

First, there is certainly a presumption that the courts in 2005 would not have entered into the Stipulated Orders incorporating the settlement agreement between the two parties had such an agreement been illegal. Namely, a finding of the legal ability of the Town to enter into such an agreement was a prerequisite to each court entering its Stipulated Order. Delaware courts have determined that an issue that is not expressly decided by a court in the course of issuing a judgment or decree is still entitled to the effect of *res judicata* if that issue was "necessarily determined thereby because [it was] essential to the validity of the judgment or decree entered."[41] As the ability of the Town to enter into this agreement was essential to

---

[40] *Ezzes*, 234 A.2d at 445; *NTC Grp., Inc. v. West Point-Pepperell, Inc.*, 1990 WL 177497, at *3 (Del. Ch. Oct. 2, 1990); 47 Am. Jur. 2d *Judgments* § 523 (2017); 50 C.J.S. *Judgments* § 974 (2017).

[41] *Equity Corp. v. Groves*, 53 A.2d 505, 509 (Del. Ch. 1947). Other jurisdictions have reached a similar conclusion. *See Studio Art Theatre of Evansville, Inc. v. City of Evansville*, 76 F.3d 128, 131 (7th Cir. 1996) (holding that "[a] necessary implicit finding by the state court, coupled with language that indicates awareness of the issues, is sufficient to preclude relitigation).

the validity of the judgment, the Town's arguments that this agreement amounted to binding future legislatures and illegal contract zoning are precluded by the doctrine of *res judicata*.[42]

Second, the Town would not be entitled to challenge its ability to enter into such an agreement to avoid the doctrine of *res judicata*. The Delaware Supreme Court has held that the doctrine of *res judicata* bars a later challenge even to the original court's jurisdiction.[43] While arguing that a settlement agreement amounted to an illegality is in a somewhat different context than a challenge to a court's subject matter jurisdiction, it is indicative of the weight a court should give a final judgment. As challenging the illegality of a contract and challenging subject matter jurisdiction are typically arguments a party can raise at any time, absent Rule 60 relief, the Town cannot avoid the effect of the 2005 judgments based on a claim that this agreement amounted to an illegality.

The Town previously had the ability to fully litigate this issue had it so chosen. Despite that ability, with the assistance of counsel, the Town recognized the benefits of entering into a settlement agreement after evaluating its chances of success. Both parties entered into this agreement after considering the repercussions of such an agreement. In this regard, application of this doctrine benefitted all involved to some degree. Namely, in 2005, both parties were postured to fully litigate the issue of whether CDBP had vested rights.[44] There is

---

[42] The remaining elements of *res judicata* are satisfied as set forth above.

[43] *See Shearin v. Mother AUMP Church*, 755 A.2d 390, 2000 WL 975117, at *1 (Del. June 12, 2000) (Table) (stating that although generally a party can raise the argument of a lack of subject matter jurisdiction at any time, when a court enters a final judgment, such an argument is barred by the doctrine of *res judicata*).

[44] Had the parties wished to litigate this matter in 2005, it would have required a court to weigh certain factors including "the nature, extent and degree of the public interest to be served by the ordinance amendment on the one hand and, on the other hand, the nature extent and degree of the

18

no question that the Court of Chancery could have issued a final binding decision, after trial on the merits, finding that CDBP's rights were vested. Instead however, the Town was able to conserve its resources by entering into the settlement agreement in 2005, which resolved all litigation in this matter. To allow this issue to be revisited would cause the perverse result of forcing parties to always litigate actions such as this to a final trial on the merits. Such an approach would be inconsistent with both judicial economy and respecting the resources of the litigants.

Accordingly, the Court must respect the finality that the settlement agreement and the 2005 Stipulated Orders provided.[45] It is clear that the parties extensively thought through these issues and agreed upon this specific mechanism to resolve the dispute.[46] Additionally, two Delaware courts, acknowledging the ability of the Town to enter this agreement, approved the settlement agreement. These two courts are presumed to have evaluated the legality of this agreement and concluded that it was a valid manner in which to dispose of the suit. Therefore, as all the elements of *res judicata* are met in this case, the Town cannot now argue that the Stipulated Orders did not recognize CDBP's vested rights.

Furthermore, not only does the doctrine of *res judicata* bar the Town from challenging CDBP's vested rights, but the similar law of the case doctrine also

---

developer's reliance on the state of the ordinance under which he has proceeded . . . ." *In re 244.5 Acres of Land*, 808 A.2d 753, 757–58 (Del. 2002). The final analysis for vested rights requires a "good faith reliance on existing standards." *Id.* at 758. The factors involved are highly factual in nature and, in the context of a zoning case, would take substantial resources on the part of all parties to take to trial.

[45] *See Asten, Inc. v. Wangner Sys. Corp.*, 1999 WL 803965, at *1 (Del. Ch. Sept. 23, 1999) (stating that courts should encourage settlement agreements and respect that expectation of finality).

[46] CDBP's Opening Brief Ex. 5.

19

precludes the Town from doing so. The law of the case doctrine "prohibits courts from revisiting issues previously decided, with the intent to promote 'efficiency, finality, stability and respect for the judicial system.'"[47] Under this doctrine, "[t]he law of the case is established when a specific legal principle is applied to an issue presented by facts which remain constant throughout the subsequent course of the same litigation."[48] The law of the case is established when a trial court enters a final decision regarding the issues decided.[49]

Directly related to the case at hand, the law of the case doctrine can also apply when a trial court's final decision is in the form of a consent judgment.[50] However, in order for this doctrine to apply in this context, the court must actually decide an issue.[51] This typically requires the parties to fully brief the issue and for the court to squarely decide it.[52] However, the "actually decided" element is also met when a court decides an issue "implicitly or by necessary inference from the disposition."[53] Importantly, a court will not apply this doctrine if there is a change

---

[47] *State v. Wright*, 131 A.3d 310, 321 (Del. 2016) (quoting *Cede & Co. v. Technicolor, Inc.*, 884 A.2d 26, 39 (Del. 2005)).

[48] *Id.* (quoting *Hoskins v. State*, 102 A.3d 724, 729 (Del. 2014)).

[49] *Id.*

[50] *See Cty. of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997) (applying the law of the case doctrine to a settlement agreement approved by a district court's consent decree).

[51] *Wright*, 131 A.3d at 321.

[52] *Id.*

[53] *Id.* (quoting *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 403 (6th Cir. 2013)).

in circumstances, the prior decision is clearly wrong, or the prior decision produces an injustice.[54]

Here, the Court of Chancery and the Superior Court decided the issue of vested rights in 2005 when they entered their judgments. The fact that it was in the form of a consent judgment does not alter this fact.[55] Therefore, the courts' decisions in 2005 that CDBP obtained vested rights are the law of the case unless one of the exceptions to this doctrine applies. Here, there is no indication that the courts' decisions in 2005 were clearly wrong. With the consent of the parties, the courts' Stipulated Orders made an unambiguous factual finding that CDBP had acquired vested rights. Furthermore, for the same reasons discussed *infra* regarding Rule 60(b) relief, the Town has not established that there is a change of circumstances from 2005 to now that would justify not applying this doctrine. Accordingly, the law of the case doctrine applies and precludes the Town's arguments regarding vested rights.

Alternatively, the Town argues that even if CDBP acquired vested rights, that right could not remain perpetually vested. The Delaware courts, however, have not imposed a time restriction on how long vested rights remain vested. This argument that vested rights can grow stale arises from the analysis of the Delaware Supreme Court in *In re 244.5 Acres of Land*.[56] Namely, the Court included in its analysis regarding vested rights, the fact that the developer did not delay in its efforts to obtain the necessary approvals.[57] From that language the Court of

---

[54] *Id.* at 322.

[55] *See Stone & Webster Eng'g Corp.*, 106 F.3d at 1117 (applying the law of the case doctrine to a settlement agreement approved by a district court's consent decree).

[56] 808 A.2d 753, 757 (Del. 2002).

[57] *Id.*

21

Chancery, in *Salem Church v. New Castle County*, extrapolated that a developer's "delay may defeat a vested rights claim."[58]  In the case at hand, the Town seeks to further extend that logic by arguing that CDBP should no longer *retain* its vested rights because after more than eleven years it has not completed the Business Park or sold all of its lots.

Delaware law, however, does not extend this premise to the extent advanced by the Town.  The issue of delay in both the Delaware Supreme Court and the Delaware Court of Chancery cases factored into the *initial* determination of whether the developer obtained vested rights.[59]  The existence of a delay was not used to argue that once a developer acquired vested rights, a delay could lead to divesting the developer of that right.   Here, the courts in 2005 determined that CDBP acquired vested rights, and therefore, a delay in development is irrelevant.

Additionally, as the Delaware Supreme Court had the opportunity to declare that vested rights are not perpetually vested but declined to do so, this court will not impose such a restriction.[60]  Instead, this Court finds that vested rights remain perpetually vested.   The very nature of vested rights requires this conclusion. Vested means that a person or property has acquired a right for the present and future, and that right is absolute.[61]  The nature of the doctrine of vested rights also counsels against imposing a time limitation.  The doctrine recognizes that, after a certain point, it would be inequitable to allow legislatures or town councils to

---

[58] *Salem Church (Del.) Assocs. v. New Castle Cty.*, 2006 WL 2873745, at *11 (Del. Ch. Oct. 6, 2006).

[59] *In re 244.5 Acres of Land*, 808 A.2d at 757–58; *Salem Church (Del.) Assocs.*, 2006 WL 2873745, at *11.

[60] *See generally In re 244.5 Acres of Land*, 808 A.2d at 757–58 (acknowledging vested rights but not imposing a time limitation on that right).

[61] *Vested*, Black's Law Dictionary (10th ed. 2014).

change the law affecting the property. The passage of a period of time does not make it any more equitable to change the nature of the right after a party has relied upon it. Therefore, CDBP's rights remain vested, and this Court will not impose an expiration on that right. This doctrine prohibits the Town from taking any legislative action that would interfere with CDBP's vested rights.[62]

### B. The Town's arguments that (1) it could not legally enter into such an agreement because it impermissibly bound future Town councils and that (2) its actions amounted to illegal contract zoning are unavailing.

The Town also seeks to avoid the continued application of the 2005 Stipulated Orders by arguing that the Court cannot interpret those documents to provide CDBP perpetual vested rights because that would impermissibly prohibit future Town councils from ever changing zoning ordinances. In so arguing, the Town advances the general rule that legislative actions are not binding on successor legislative bodies in a way that would limit a future town government's legislative discretion. The Town maintains that if the Stipulated Orders are interpreted to provide CDBP with perpetual vested rights, the Court could not enforce the Stipulated Orders because that would constitute an illegality.[63]

CDBP counters that the Town Council was free to enter into this contract that created legal obligations which future councils would be required to follow. It argues that the Stipulated Orders provide for perpetual vested property rights, and therefore, the contractual promises continue to bind subsequent Town councils.

---

[62] 16B Am. Jur. 2d *Constitutional Law* § 746 (2009).

[63] The Town also argues that the 2005 Stipulated Orders cannot forever preclude future legislative changes because such relief could not have been achieved through the mandamus action filed in 2005. However, this argument does not recognize the parallel action in the Court of Chancery seeking declaratory relief that CDBP obtained vested rights. Therefore, the Court finds no merit in the Town's argument that the courts in 2005 had no power to grant such relief.

Both parties look to *Glassco v. County Council of Sussex County*[64] to support their propositions. In *Glassco*, the Court of Chancery confronted a moratorium that included language that the provision would remain in effect until acceptable plans were submitted to the County Council.[65] The court, in *dicta*, voiced concerns regarding this language and wrote that the County Council did not have the authority to bind future council's ability to remove the moratorium.[66] The court also declared that "Council has no power by ordinance to create legal obligations that restrict the future exercise of statutorily created discretion."[67] On the other hand, in a footnote, that court acknowledged a council's ability to enter contracts that create legal obligations which future councils must respect.[68] It is this language that CDBP relies on to support its position.

The arguably offending portion of Article 5A that is relevant to this inquiry provides that

> [a] vested property development right, once established as provided in this Article 5A, precludes any zoning or land use action by the Town of Cheswold which would alter, impair, prevent, diminish, impose a moratorium on development, or otherwise delay the development or use of the property subject to this Article 5A, except with the written consent of the owner of such land.[69]

The Court recognizes that this language directly impacts the ability of future councils to modify this zoning ordinance as to CDBP.

---

[64] 1993 WL 50287 (Del. Ch. Feb. 19, 1993).

[65] *Id.* at *4.

[66] *Id.* at *5.

[67] *Id.*

[68] *Id.* at *5 n.7 (stating that "Council may, of course, by contract create legal obligations to others that must be respected by future Councils").

[69] CDBP's Opening Brief Ex. 3.

24

For the reasons discussed *supra*, *res judicata* bars this argument and is dispositive of the matter. However, independently, even if it did not, the Town would not be entitled to its requested relief on this basis. It is an accurate general statement of the law that one legislative body cannot bind the discretion of future legislative bodies.[70] However, when interpreting the terms of a stipulated order, general rules of contract interpretation also apply.[71] Accordingly, even if including this provision amounted to an *ultra vires* act, the Town would still not be entitled to the relief it is seeking because "[a]n invalid term of an otherwise valid contract, if severable, will not defeat the contract."[72] Instead, the portion of the settlement agreement that amounted to an *ultra vires* provision would be properly severed in this case, leaving the remainder of the agreement enforceable. Namely, the provisions in the incorporated Article 5A that separately and expressly recognized CDBP's vested rights would not be rendered invalid if another severable portion of the ordinance included an illegal provision.

In order for a court to sever a portion of an agreement, it must first determine whether the parties intended the agreement to be severable.[73] The Court must make this determination based on the "terms and subject matter of the contract, together with any pertinent explanatory circumstances."[74] One manner in

---

[70] *Ohio Life Ins. & Tr. Co. v. Debolt*, 57 U.S. 416, 431 (1853); *Glassco*, 1993 WL 50287, at *5.

[71] *E.g., United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975); *Harris v. City of Phila.*, 47 F.3d 1333, 1337 (3d Cir. 1995).

[72] *Hildreth v. Castle Dental Ctrs., Inc.*, 939 A.2d 1281, 1283–84 (Del. 2007); *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 284 (3d Cir. 2014).

[73] *Orenstein v. Kahn*, 119 A. 444, 445 (Del. 1922); *see also Tracey v. Franklin*, 67 A.2d 56, 61 (Del. 1949) (stating that "[w]hether or not the terms of a contract are severable is purely a question of the intent of the parties")

[74] *Orenstein*, 119 A. at 445; *Abercrombie v. Davis*, 123 A.2d 893, 901 (Del. Ch. 1956); *Equitable Tr. Co. v. Del. Tr. Co.*, 54 A.2d 733, 738 (Del. Ch. 1947).

25

which parties can express their intent to have an agreement be severable is through the inclusion of a severability clause.[75] However, the settlement agreement here did not have such a provision. Therefore, this Court must determine whether the parties intended the agreement to be divisible without such an express indication. As this is a summary judgment proceeding, the Court will first look to the terms and subject matter of the agreement before turning to additional materials the parties provided.[76]

Here, the overarching purpose of the agreement and resultant adoption of Article 5A was for the Town to recognize CDBP's vested rights and for CDBP to dismiss its suit against the Town. The settlement agreement, without the allegedly overreaching portion of Article 5A, still accomplished both parties' objective. Namely, absent this potentially suspect provision, the agreement recognized CDBP's vested rights. Once a party obtains such a right, the doctrine of vested rights protects it against legislative interference.[77] Moreover, the agreement, without this provision, still ended the litigation for the Town.

While it is clear to this Court that the parties intended the settlement agreement to be divisible and therefore the provision stating that future Town

---

[75] *VICI Racing LLC*, 763 F.3d at 285 (citing *Doe v. Cedars Acad., LLC*, 2010 WL 5825343, at *4 (Del. Super. Ct. Oct. 27, 2010)).

[76] *See Abercrombie*, 123 A.2d at 901 (stating that the court would look to the terms and subject matter before any of the facts and circumstances shown in the papers filed because it was a motion for summary judgment).

[77] *See State v. Raley*, 1991 WL 18114, at *3 (Del. Super. Ct. Feb. 8, 1991) (stating that the vested rights doctrine prohibits the enactment of a government regulation or legislation that interferes with the person's intended use of the land as a violation of due process); David G. Heeter, *Zoning Estoppel: Application of the Principles of Equitable Estoppel and Vested Rights to Zoning Disputes*, 1971 Urb. L. Ann 63, 64–65 (1971) (explaining that once someone acquires vested rights, the legislature cannot interfere with that right); *Vested-Rights Doctrine*, Black's Law Dictionary (10th ed. 2014) (stating that once a right has vested by a social compact or by a court's judgment, the legislature cannot interfere with that right).

councils cannot interfere with vested rights could be severed, the Court still must determine if the remaining agreement amounts to a validly enforceable agreement.[78] In order to be an enforceable contract after a court severs a provision, the consideration must remain in effect.[79] Additionally, the terms of the remaining agreement must be sufficiently definite.[80]

The consideration for the settlement agreement at issue was that the Town would adopt Article 5A recognizing CDBP's vested rights in exchange for CDBP dismissing its litigation against the Town. This consideration remains even after the Court severs the provision at issue. Moreover, the remaining terms of the agreement recognizing CDBP's vested rights are sufficiently definite to enforce the contract. The agreement could not provide for this more expressly. Namely, Article 5A B. a. provides, without the severed language from Article 5A B. c., that "[a] vested property right [for CDBP in the Business Park"] shall be deemed established." Accordingly, even if one provision of the contract amounted to an *ultra vires* act on the part of the Town, it would be appropriate for this Court to sever the offending provision and continue to enforce the remaining settlement agreement.[81]

---

[78] *See VICI Racing, LLC*, 763 F.3d at 285 (stating that once a court determines a provision is severable, it must then ensure that the remaining provisions are an enforceable contract).

[79] *Weed v. Lyons Petroleum Co.*, 294 F. 725, 731 (D. Del. 1923).

[80] *VICI Racing, LLC*, 763 F.3d at 285.

[81] Not only would the court sever the language in the settlement agreement, analyzing Article 5A purely as an ordinance and not as an incorporated term of the Stipulated Orders, would similarly warrant severance. Because a municipal ordinance has a presumption of validity and every effort should be made to indulge in favor of the ordinance's validity, such an action would be appropriate to ensure the legality of Article 5A. *See Tate v. Miles*, 503 A.2d 187, 191 (Del. 1986) (stating that there is a presumption of validity when a municipality enacts a zoning provision); 6 Eugene McQuillin, *The Law of Municipal Corporations* §20:6 (3d. ed. 2007) (noting that judicial respect for the other branches of government requires a presumption of

27

Additionally, to the extent that the Town argues that any recognition of vested rights in the zoning context impermissibly binds future Town councils from exercising their police powers, such an argument is unpersuasive. While the very nature of the vested rights doctrine limits actions future councils can take with regard to property rights, Delaware Courts are willing to recognize vested rights in the zoning context.[82] Accordingly, as the courts in 2005 determined that CDBP acquired vested rights, recognition of such a right does not impermissibly bind future Town councils.

The Town's second argument is that the agreement constituted illegal contract zoning, and therefore, the Court cannot enforce the Stipulated Orders. The Town argues that it could not legally enter into a contract that limited its authority to enact zoning legislation, as zoning authority is an essential police power. At oral argument, the Town argued that it was incapable of entering into this contract because it required the Town to perform a legislative act that requires a public process. According to the Town's argument, as the Stipulated Orders required the Town to partake in illegal actions, the Court cannot enforce that illegality. Therefore, the Town argues that the Stipulated Orders are void.

CDBP counters that the Town's power to zone can be curtailed when the property owner has achieved vested rights. According to CDBP, these vested

---

validity for municipally enacted ordinances); *see also Tanner v. Tuscaloosa Cty. Com'n*, 594 So.2d 1207, 1209 (Ala. 1992) (stating that when reviewing a municipal ordinance, a court must make every effort to find in favor of its validity); 6 Eugene McQuillin, *The Law of Municipal Corporations* §20:6 (3d. ed. 2007). Moreover, enforcement of this provision without this paragraph would not contravene or even affect the municipality's intent of recognizing CDBP's vested rights. *Newark Landlord Ass'n v. City of Newark*, 2003 WL 22724663, at *4 (Del. Ch. Nov. 17, 2003) (stating that a court will not sever an invalid provision if doing so contravenes the intent of the legislature). Additionally, the amendment, after the paragraph is severed, is capable of enforcement. *Farmers for Fairness v. Kent Cty.*, 940 A.2d 947, 962 (Del. Ch. 2008).

[82] *In re 244.5 Acres of Land*, 808 A.2d 753 (Del. 2002).

28

rights make the property owner immune from future changes to the zoning ordinances. Moreover, CDBP argues that Article 5A, which allowed the Business Park to continue its operations under the 1977 Ordinance, was not a private agreement between the Town and CDBP. Instead, the agreement was reached during a Town Council meeting where CDBP presented its position and the Town agreed to recognize the CDBP's rights publicly. It was duly passed by the Town Council. Therefore, CDBP maintains that this was not an instance of contract zoning and instead was a validly adopted zoning ordinance.

The seminal case in Delaware addressing contract zoning is *Harman v. Buckson*.[83] There, a developer sought to build townhomes, and when the town's Planning Commission frustrated the developer's original plans, the developer threatened to litigate whether the town validly enacted the original zoning ordinance.[84] In order to avoid litigation, the town entered into an agreement with the developer.[85] That agreement permitted the developer to build the townhomes, but the building plan was substantially different from the one the Town Council had previously approved.[86] A third party then brought suit challenging the validity of the agreement and asked the court to find that the initial zoning ordinance was properly enacted.[87]

Despite the developer's argument that the agreement "was an appropriate exercise of [the town's] inherent authority to compromise claims against it," the

---

[83] 467 A.2d 694 (Del. Ch. 1983).

[84] *Id.* at 696.

[85] *Id.*

[86] *Id.*

[87] *Id.*

court determined that the agreement constituted illegal contract zoning.[88] The court in *Harman* set forth the manner in which towns are required to enact zoning ordinances and determined that this contract did not adhere to the statutory manner in which such legislation is required.[89] The court determined that this contract "bargained away part of its zoning power to a private citizen which the town did not have the authority to do."[90] The court admonished the agreement as being for the benefit of one private landowner whereas zoning is "an exercise of the police power to serve the common good and general welfare."[91] The court went on to state that this legislative function cannot be "curtailed by bargain or its exercise controlled by the considerations which enter into the law of contracts."[92]

In another Delaware decision, the Court of Chancery held that an agreement between a developer and municipality to rezone is *per se* illegal.[93] While it is clear that a town cannot enter into a contract with a private entity which strips the government of its zoning power, the agreement at issue here is not of a nature that constitutes illegal contract zoning. Here, the nature of the agreement and the circumstances surrounding its enactment are factually dissimilar from the agreement that the court examined in *Harman*.

Namely, CDBP went before the Town Council when the 2005 Ordinance was under consideration. During that public meeting after receiving the Town citizens' input, the Town agreed to include the amendment which acknowledged

---

[88] *Id.* at 699.

[89] *Id.*

[90] *Id.*

[91] *Id.*

[92] *Id.* at 699–700.

[93] *Wilm. Sixth Dist. Comm. v. Pettinaro Enters.*, 1988 WL 116496, at *3 (Del. Ch. Oct. 27, 1988).

30

CDBP's vested rights. The Town made the decision to acknowledge this zoning publicly in a forum that allowed for other Town citizens to voice their concerns. Despite the Town's agreement to acknowledge CDBP's vested rights to continue developing the Business Park under the 1977 Ordinance, for an undisclosed reason, the Town did not include the amendment when it published the new zoning ordinances. Not publishing a validly enacted ordinance, generated CDBP's Superior Court and Court of Chancery actions. The Stipulated Orders recognized the same. Also, the litigation of a claim regarding vested rights is not seeking an order supporting contract zoning. Stipulated Orders issued by the courts resolving such litigation also cannot be considered contract zoning.

This agreement was not strictly a private agreement between the Town and the developer. The public was initially able to weigh in on this provision and many expressed their support for it.[94] Moreover, this agreement is not for the sole benefit of a single Town resident. While it acknowledges a single resident's vested rights, the provision is in furtherance of the Town's police powers because the Town recognized that acknowledging these rights was for the public benefit. The Town anticipated that by recognizing these vested rights, the development of the Business Park would be in the entire Town's best interest for purposes such as job creation. Accordingly, this agreement did not constitute an illegality that would require this Court to refuse to enforce the 2005 Stipulated Orders.

### C. On the record before the Court, the Town is unable to satisfy the requirements entitling it to Rule 60 relief.

The Town seeks, in the alternative, relief from the judgments of the Court of Chancery and Superior Court pursuant to Rule 60. The Town argues that

---

[94] CDBP Opening Brief Ex. 1 at 6.

31

continued application of the 2005 Stipulated Orders would be contrary to settled law and would endanger the public health, safety, and welfare. Specifically, the Town argues that the 1977 Ordinance lacks provisions pertaining to sidewalks, parking lots, drainage, building permits, building standards, construction standards, fire hydrants, sprinkler systems, or other safety systems.[95] According to the Town, given the lack of public welfare provisions in the 1977 Ordinance, it would be inequitable to allow this ordinance to stand. Therefore, the Town seeks relief from the Stipulated Orders in order to enact a new zoning ordinance applicable to CDBP that better addresses the public need.

The Town additionally argues that the parties have fulfilled the purpose and intent of the Stipulated Orders. In furtherance of this argument, the Town acknowledges that it published Article 5A, and it processed and approved, as agreed upon, four of the five then pending applications. The Town argues that because the parties fulfilled the intent of the Stipulated Orders, the prejudice to the Town in the continued enforcement of the Stipulated Orders outweighs any prejudice to title holders within the Business Park. Therefore, according to the Town, it should be allowed to enact new zoning ordinances for the Business Park to update the current ordinance that lacks several key public welfare provisions.

Under the circumstances of this case, where both the Superior Court and the Court of Chancery entered Stipulated Orders, the only manner in which the Town may obtain relief is through Rule 60. On motion, Rule 60(b) provides relief from a judgment or order for

---

[95] To illustrate this point, the Town points to the fact that there are no local environmental laws, no storm water management, no building permit standards that apply to the Business Park, no drainage provisions, no erosion and sediment control standards, no trees, no building height requirement, and no open space requirement.

(1) [m]istake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.[96]

In examining a motion for relief pursuant to Rule 60(b), the Court is guided by the two significant values that this provision implicates: ensuring the integrity of the judicial process and the finality of judgments.[97] Given the significant interest in preserving the finality of judgments, "Rule 60(b) motions are not to be taken lightly or easily granted."[98] Here, the Town argues that it is entitled to relief pursuant to Rule 60(b)(5) and (6). Under Rule 60(b)(5), for a court to grant relief, the party must show that "the judgment, if permitted to stand, will cause a manifest injustice to the moving party."[99] Under Rule 60(b)(6), a court will only grant relief if there are extraordinary circumstances.[100] Relief under this provision is rare because the extraordinary circumstances test is a demanding standard that requires evidence of extreme hardship.[101]

Here, the Town is not entitled to relief pursuant to Rule 60(b)(5) or (6). Relief pursuant to paragraph (b)(5) would be available if the Stipulated Orders amounted to manifest injustice to the Town and, more importantly, its citizens if

---

[96] Ct. Ch. R. 60(b)(2); Super. Ct. R. 60(b)(2).

[97] *MCA, Inc. v. Matsushita Elec. Indus. Co.*, 785 A.2d 625, 634 (Del. 2001).

[98] *Id.* at 635.

[99] *High River Ltd. P'ship v. Forest Labs., Inc.*, 2013 WL 492555, at *7 (Del. Ch. Feb. 5, 2013); *Nakahara v. the NS 1991 Am. Tr.*, 718 A.2d 518, 520 (Del. Ch. 1998).

[100] *Nakahara*, 718 A.2d at 520.

[101] *High River Ltd. P'ship*, 2013 WL 492555, at *9.

left unchanged. Significant, unanticipated changes to the factual circumstances following the enactment of a court's final judgment or order can be sufficient to constitute manifest injustice.[102] However, after a review of the record before the Court, the Town has not identified any concrete change in circumstances following the enactment of Article 5A in 2005. Moreover, although the Court has the power to declare the rights of the parties, without comparative proposed ordinances or a more specific proposal from the Town, for the Court to do so would amount to issuance of an advisory opinion for the Town Council. Based on the lack of evidence put forth by the Town, it is unable to satisfy its burden of establishing manifest injustice. The Court further declines to provide a blanket advisory opinion setting parameters for future ordinances. Such an opinion would interfere with the legislative discretion of the Town's legislative body, and at the same time could also inappropriately infringe on the property rights of CDBP.

Relief pursuant to paragraph (b)(6) would be available if continued enforcement of the Stipulated Orders amounted to extreme hardship. Conceivably, the Town's inability to regulate the Business Park in order to protect the safety of its citizens could also amount to extraordinary circumstances warranting relief under paragraph (b)(6). It is important for municipalities to maintain the ability to enact zoning ordinances for the general welfare of the entire town.[103] Therefore, if the Town could show that the 1977 Ordinance does not contain necessary provisions to protect the health and safety of the public and if the Town can show that an updated zoning provision is the only avenue through which to address modern safety concerns, the Town could conceivably establish that it is entitled to Rule 60(b)(6) relief. However, the record before the Court does not establish

---

[102] *Id.* at *7.

[103] *E.g., Shellburne, Inc. v. Roberts*, 224 A.2d 250, 253 (Del. 1966).

extreme hardship. In its Petition, the Town merely relies upon conclusory statements that the 1977 Ordinance does not contain certain safety provisions. The Town has neither identified in its briefing nor made available in the evidentiary record before the Court, evidence that a lack of these provisions has created a danger to or has damaged the health and safety of the Town.

Moreover, the Town has not sufficiently shown that the 1977 Ordinance leaves gaps in safety legislation and no other avenue is available to provide such protection.[104] While the Town made conclusory statements to that effect, conclusory statements are insufficient to satisfy its burden. Where the Town has not provided concrete evidence that the 1977 Ordinance has created unsafe conditions and reference a proposed a new ordinance, the Court is unable to provide the guidance it seeks. Additional factual information, such as a proposed comparative ordinance coupled with evidence of unsafe conditions instead of conclusory statements, would be necessary for the Court to determine whether allowing the 2005 Stipulated Orders to stand would create a manifest injustice or an extraordinary circumstance.

Furthermore, the Town's argument that the intent of the Stipulated Orders is complete, and therefore, it should be entitled to relief, is unavailing. Even if this factored into the analysis for Rule 60 relief, it would not weigh in favor of granting the Town its requested relief. The predominate purpose of the settlement agreement was to acknowledge CDBP's vested rights. Since the Business Park has not yet developed its remaining vacant lots, the purpose is not complete. Therefore, the intent of the parties in entering the settlement agreement has not

---

[104] Notably, CDBP conceded at oral argument that the Town could potentially enact an updated version of the International Building Code that would apply to the Business Park to address its safety concerns. It is clear that the Town has not considered alternative options to addressing such health and safety concerns.

35

been achieved, and this would not weigh in favor of granting the Town its requested relief.

Evidence of record that would be necessary to sustain a Rule 60(b) challenge would include the evidence of the alleged hardship placed on the Town by the Stipulated Orders. However, the record cited by the parties in their briefs, and the documents the parties submitted in addition to those briefs, do not provide evidence meeting the Town's burden. While the Court recognizes the Town's need to enact ordinances for the benefit of its citizens, the Town has not established, based on the record before the Court, that it is entitled to Rule 60 relief. CDBP maintains vested property rights and the Town has not justified a proper basis to receive relief from a judgment recognizing the Business Park's vested rights. Therefore, based on the record before the Court here, the Town's request for relief pursuant to Rule 60 is denied, without prejudice.

## V. Conclusion

For the reasons set forth above, CDBP is entitled to summary judgment. The Town and CDBP had the ability to enter into this agreement and did so legally. The settlement agreement acknowledged that CDBP acquired vested rights in developing the property pursuant to the 1977 Ordinance, and the courts subsequently approved that agreement. The doctrine of *res judicata* bars the Town from arguing otherwise.

There was an actual controversy sufficient for issuance of a declaratory judgment, but the scope of the declaration cannot be made as broadly as the Town requests. Such a broad declaration would exceed the scope of what is actually in controversy. Because of a lack of specific proposals and evidence of record regarding changes in circumstances, the Court is unable to issue a declaration

36

providing what would essentially be an advisory opinion regarding the parameters for future ordinances and land use restrictions.

Therefore, the Court declares that the Town cannot alter the application of its zoning ordinances to CDBP in ways that would interfere with CDBP's vested rights. On the record before the Court, the Town has not justified that it is warranted relief from the 2005 Stipulated Orders.